## HASTY & *al. vs.* WHEELER.

A. gave B. a lease of a "store and cellar" for five years, if not sooner deter-
mined by the lessor. The lessee covenanted not to commit strip or waste —
but was to have the right " to repair, alter and improve the premises in such
" manner as should be for his interest and benefit"— and " all fixtures which
should be added to the premises, should remain and become the property of
the lessor." If the lessee should hold, for the whole term, the improvements
were to be at his expense, but if the lease should be sooner determined, the
lessor was to pay " for all betterments" made by the lessee. The latter en-
tered, raised the store from one to two feet, and finished off a victualing cel-
lar, it never having been used for that purpose before, and made other altera-
tions. *Held*, that this did not constitute *waste*, but that, the lessee being
obliged to quit before the expiration of his term, was entitled to recover of the
lessor the *value of the improvements* made to the estate.

THIS was an action of covenant broken, founded on an inden-
ture or lease executed between the parties in this suit on the 2d
day of *May*, 1831. The general issue was pleaded, and a brief
statement filed, alleging general performance.

The lease was from the defendant to the plaintiffs, of a " store
and cellar" in *Bangor*, to hold for the term of one or five years
from the 1st day of *November*, 1830. The plaintiffs covenanted
to pay an annual rent of one hundred dollars, and *not to commit
strip or waste.*

It was therein further stipulated as follows, *viz :* " That the
" said *Hasty & Huntress* may at their own expense repair, alter
" and improve said premises in such manner as shall be for their
" interest and benefit ; but that all fixtures which they may make
" to the premises during said term shall remain and become the

" property of the said *Wheeler*, at the end of said term, without " any charge for the same — that if the said *Wheeler* do not hold " the premises for the whole time, this lease shall expire after " two years from this date ; but in such case said *Wheeler* shall " pay the said *Hasty & Huntress* for all betterments which they " shall make in the premises."

It was proved that the plaintiffs, after entering into possession of the premises under their lease, raised the store from one to two feet, and built such walls, and erected such other fixtures as rendered the cellar convenient for occupancy as a victualing cellar. In doing which they expended about $400. The cellar had never been used as a victualing cellar, nor was it in a situation so to be used when the lease was executed.

It was further proved, that this expenditure increased the value of the property to an amount greater than the sum expended, provided the building had remained, and had continued to be occupied for the ordinary and proper purposes of such a building : but if the building was to be removed and the site improved by the erection of large brick tenements, as was the fact, the value of the property had not been increased by the expenditures of the plaintiffs.

The plaintiffs were obliged to quit the premises before the expiration of the five years mentioned in the lease, by reason of *Wheeler's* not holding the same : — and they claimed to be remunerated for the expenditures by them made.

*Parris J.* who tried the cause, intending to reserve the question, whether the alterations actually made, were such as were provided for in the indenture, directed the jury to ascertain the value of these alterations to the owner of the estate, provided the building had remained and had been occupied for lawful purposes. If, in the opinion of the Court, the plaintiffs were not entitled to any thing for the alterations and expenditures by them made, then the verdict, which was for the plaintiffs, was to be set aside, and they were to become nonsuit, otherwise judgment was to be rendered thereon.

The case was argued in writing, by *Rogers*, for the plaintiff, and *T. P. Chandler*, for the defendant.

For the defendant, it was contended that the acts of the plaintiffs in raising the building and making the alterations named in the case, were in violation of their own covenant against strip and waste. 3 *Dane's Abr.* 214, to 216 ; 218, 219, 221, 232, 241 ; 3 *Saund. Rep.* 259, note.

The alterations were not such as were provided for in the indenture. The defendant never intended to give the entire control of the premises to the plaintiffs, permitting them to change its character, and render it a new species of property.

PARRIS J. — It is contended by the defendant, that the acts of the plaintiffs in making the alterations named in the case, were in violation of their own covenants against strip and waste.

Such alterations as were made in the store and cellar would probably fall within the ancient legal definition of voluntary waste, although we do not think it is strictly a change of the nature and character of the premises demised. It is yet a store and cellar, and so it is called in the indenture. The evidence of the estate is therefore not changed, as in the cases put of a grist mill changed into a saw mill or fulling mill ; or a hall into a stable. But still the alterations were such as constitute waste as it is defined in some of the books.

If, therefore, the covenant against waste is to be construed according to what the defendant contends is its strict legal definition, and is not modified by other parts of the indenture, it follows, that the plaintiffs made the alterations in their own wrong and are not entitled to remuneration for the expense thereby incurred.

But we are to look through the whole instrument to learn the intention of the parties, and when that is ascertained it is the duty of the court to carry it into effect, the first general principle in the construction of covenants being, that they shall be so expounded as to carry into effect the intention of the parties.

*Plowden* says, the scope and end of every matter is principally to be considered ; and if the scope and end of the matter be satisfied then is the matter itself, and the intent thereof also accomplished. 1 *Plowd. Com.* 18.

The rule of the civil law is, if the words of a covenant appear to be contrary to the intention of the covenantors, which is other-

wise evident, such intention must be followed rather than the words. 1 *Domat.* 22. However general the words of a covenant may be if standing alone, yet if from the covenants in the same deed it is plainly and irresistibly to be inferred, that the party could not have intended to use the words in the general sense which they import, their operation is to be limited. If such an inference does arise from concomitant covenants they will control.

We find in the indenture a covenant on the part of the defendant, that the plaintiffs may alter and improve the premises in such manner as shall be for their interest and benefit. By *improve,* we understand is meant to make better, so that the tenants might alter and make the premises better at their own expense. It is difficult to reconcile this covenant with that of the tenants' restraining them from waste, if that term is to have such a strict legal signification as contended for by the defendant. But if we apply to it the common ordinary meaning, the two covenants may stand together and there will be no inconsistency.

The construction then would be, that the tenants might alter the premises at their own expense, in such manner as shall be for their interest and benefit, but not so as to injure the premises or render them less valuable.

They might *improve* them, that is, make them better, but should not commit strip or waste, that is, make them worse. Indeed, in some authorities, this is considered the criterion or test of waste, where the nature of the thing demised is not changed, *Mr. Dane* says, it is not waste if the tenant better the thing of the same kind ; and generally nothing can be considered as waste which does not *injure* the inheritance, either by lessening its value or by weakening its title. 3 *Dane's Abr.* 222. *Bac. Abr. Waste C.*

Unless the construction obovementioned be put upon the former covenant, its legal operation would be to defeat the latter, for according to some of the authorities referred to by the defendant's counsel it would be waste to remove a door or a window, or any thing once fixed to the freehold.

The strictness of the law in relation to waste, has in some of the older cases been carried to an unwarrantable extent, and as *Lord Tenterden* said in *Young* v. *Spencer,* 10 *Barnew. & Cresw.*

145, they are not reconcilable with each other. That was an action on the case in the nature of waste, brought by a landlord against his tenant for opening an additional door in the house demised. The jury found that by this act of the tenant no injury whatever was done to the house, but, under the judge's direction, gave a verdict for the plaintiff with nominal damages. On a motion for a new trial before the *King's Bench,* a new trial was granted, and the court held it not to be waste unless it detracted from the lessor's evidence of title. So in an action of waste for ploughing up three closes of meadow land and converting the same into garden ground and building thereon, the jury found a verdict for the *plaintiff* with three farthings damages, being one farthing for each close, whereupon the court entered up judgment for the *defendant. 2 Bos. & Pull.* 86.

If a tenant for life or years commit waste, he forfeits the place wasted and treble damages; and yet, if by the terms of his lease it appears that additions and improvements were to be made by the lessee, no action of waste could be sustained, although he make such alterations as, at common law, would have been waste.

In *Doe* v. *Jones,* 4 *Barnew. & Adolp.* 126, the premises demised were a dwellinghouse, garden, &c. The lessee covenanted to repair and keep repaired the messuage, &c., by the indenture demised, *together with such buildings, improvements and additions as should be made by him.* The lessee took down part of the house front, next to the street, and converted the lower portion of the premises, on that side, into a shop. The old windows, which were of the form usual in private houses of that description, and about four feet six inches wide, and five feet high, were taken away, and shop windows put in, measuring about eight feet in width by six in height. On the inside, a partition on the ground floor was broken through, a new door made in it and an old one stopped up. During all these proceedings notice *in writing* was given to the lessee not to alter the premises. In giving an opinion, *Taunton J.* says, " This case is the same as if there had been an express contract for the liberty to make improvements which, at common law, would have been waste. Here the contract is implied." That is, the covenant on the part of the

lessee to keep repaired such improvements as he should make, created an implied contract on the part of the lessor that such improvements might be made, although they would be waste at common law. In that case, there was no express covenant against waste, as there is in this. But that fact does not affect the principle, for in the absence of all express covenants the lessee is liable to an action of waste, in which the forfeiture is the estate wasted and treble damages, or to an action on the case, in the nature of waste, in which the plaintiff recovers the actual damages which the premises have sustained.

The alteration of the premises, in *Doe* v. *Jones*, was a conversion of a private dwellinghouse, or a part thereof, into a shop, and was quite as important, and as clearly within the common law definition of waste, as were the alterations made by the plaintiffs in the case at bar.

From this examination of principle and authority we think the plaintiffs were not so restrained by their covenants, as to be inhibited from making such alterations in the demised premises as might be for their interest and benefit, although they might come within the strict legal definition of waste.

We have already said that the alterations did not change the character of the property so as to affect the evidence of the lessor's estate. From the phraseology of the indenture it is to be inferred that the store and cellar were considered different tenements as they are each particularly described.

If they had been considered as constituting but one tenement, a demise of the cellar separately would have been unnecessary, as the lease of the store would have included the cellar. It is also apparent that the parties contemplated alterations of a permanent nature, as there is a provision in the indenture that *all fixtures which the lessees may make to the premises during the term, shall remain and become the property of the lessor without any charge therefor.*

Under this, and the other parts of the lease already commented upon, the lessor would be amply secure. In the first place, under the covenant against strip and waste, he would be secure against *injury* to the premises by alterations. On the other

hand, he would be abundantly safe under the agreement that all the alterations, however expensive or beneficial, would become his own, free of expense, at the expiration of the lease. Thus favorably situated it is no matter of surprise that the lessor should yield to the lessee the right of *improving* the estate by alterations. There is nothing in the arrangement inconsistent with reason and good sense on the part of a cautious lessor. Nor do we perceive that the force of the argument is diminished by the fact that the improvements were to be paid for by the lessor, if the lease was terminated by him within the five years, as it would depend entirely on himself whether to become chargeable for the alterations or not. If it was for his interest to terminate the lease earlier, he might do so by paying for the improvements; but if he chose to acquire them free of charge, he could do so merely by waiting until the expiration of the contemplated term. The lessees were completely in the power of the lessor, and they were admonished, at every step, not to expend a single dollar improvidently, as they could not recover it, even if the lessor terminated the lease the next day, unless the estate was thereby made better; nor could they recover it at all, however greatly the value of the estate might be enhanced, if they continued to occupy throughout the contemplated term.

The jury have found, that the expenditure increased the value of the property, as it then stood, to an amount greater than the sum expended, thereby establishing the fact that nothing was done injurious to the lessor, even if his liability to pay for the improvements had been absolute. We admit the correctness of the concluding paragraph in the defendant's written argument, that law and equity usually draw after them the judgment of the court, but, in this case, we cannot perceive that either is on the side of the defendant.