## SAMUEL A. WAY *vs.* NAHUM REED.

If one of two lessees, who covenant jointly to pay the rent and perform other stipulations, is described as surety, in a lease which provides that the lessees shall not lease or underlet or permit any other person to occupy the premises except such as the lessor shall in writing approve, the assignment by the principal lessee of all his interest in the lease, with the consent of the lessor, to one who signs a written agreement with the lessor and lessees, and furnishes guarantors that he will perform the stipulations of the lease, does not discharge the lessee who is described as surety from the obligation of his covenants, although such assignment and agreement were made without his knowledge.

The use of demised premises, by the assignee of a lease, for the unlawful sale of intoxicating liquors, without the actual knowledge of the lessor, will not discharge one of the original lessees, who is described as surety, from the obligation of his covenants.

The reëntry by a lessor upon demised premises, for failure on the part of the assignee of the lease to fulfil its stipulations, and the re-letting of the same, under authority expressly reserved in the lease, will not discharge one of the original lessees, who is described as surety, from the obligation of his covenants.

CONTRACT brought to recover the rent and taxes and the expenses of advertising, repairing, cleansing and taking care of a house on Harrison Avenue in Boston. Calvin Reed, one of the original defendants, was defaulted; and the action was defended by Nahum Reed alone.

At the trial in the superior court, before *Morton*, J., without a jury, it appeared that on the 20th of April 1860 the plaintiff, by an indenture under seal between him "and Calvin Reed and as surety Nahum Reed," leased to said Reeds the house referred to, for five years from the 1st of May 1860, for rent at the rate of $1000 a year; "and the said lessees covenant with the lessor and his assigns to pay the said rent in equal payments of eighty-three $\frac{34}{100}$ dollars each, at the expiration of each and every month from the date hereof; . . . . . . to pay all taxes and assessments whatsoever, whether in the nature of taxes now in being or not; and all charges for cleansing which may be payable for or in respect of the premises, or any part thereof during the said

term. . . . . . . And this lease is on the express condition that the lessees shall not lease nor underlet nor permit any other person or persons to occupy the same, except such as the lessor or those having his estate in the premises shall in writing approve. . . . . . . And in case the said rent or taxes shall be in arrears for the space of one day, and the same shall have been duly demanded on or after the day when the same shall have become payable, . . . . . . or if any of the covenants aforesaid to be observed on the part of the lessees or those holding under them shall be broken, the lessor or those having his estate in the premises may, without further notice or demand, enter upon the premises, and expel the lessees or those holding under them, or may otherwise legally evict him or them, without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant; and thereupon the lessor may, at his discretion, re-let the premises at the risk of the lessees, who shall remain for the residue of said term responsible for the rent therein reserved, and shall be credited with such amounts only as shall be by the lessor actually realized ; and the lessor shall be allowed five per cent. commission for collecting the same, and reasonable charges for repairs, &c."

On the 1st of December 1860 Calvin Reed by an instrument in writing assigned all his interest in the above lease to Ebenezer F. Kingsbury, subject to all the agreements and conditions therein contained ; and on the same day Kingsbury signed an instrument reciting the above assignment, and agreeing to perform all the covenants, conditions and agreements in the lease ; and on the same day U. R. Williams and W. H. Grant signed an instrument reciting the above assignment and agreeing with Calvin Reed and Nahum Reed and Samuel A. Way to be responsible to them and each of them that Kingsbury should faithfully discharge all the covenants of the lease. On the 8th of May 1861 Kingsbury signed an instrument reciting that he was assignee of the above lease, and that the rent had been duly demanded of him on each and every month when by the terms thereof it was due, and that he had been unable to pay and had not paid the same, and surrendering the

premises to the plaintiff, and consenting that the latter should take immediate possession thereof and re-let the same on account of the original lessees. The papers dated the 1st of December were executed without the knowledge of Nahum Reed; and Kingsbury then went into possession of the premises, and continued therein until May 10th 1861, making partial payments of rent. On the 8th May 1861, the rent being in arrears, the plaintiff, having previously notified Kingsbury and Williams, procured from Kingsbury the instrument above referred to, and on the 10th of May entered upon and took possession of the premises for breaches of the covenants of the lease, and afterwards in good faith incurred the expenses specified in the bill of particulars annexed to the declaration, and re-let the premises and received some rent therefor.

The rent to December 1, 1860, was paid in full by Calvin Reed. The plaintiff made no agreement to cancel or annul the lease, unless such would be the legal effect of the writings above referred to.

About the 1st of February 1861 Kingsbury erected a bar in one of the rooms of the house, and thereafter openly and unlawfully sold intoxicating liquors there; but the plaintiff had no knowledge of this until about the 1st of May 1861, when, upon his prohibition, Kingsbury discontinued the sale. The plaintiff employed an agent to collect his rents and oversee his tenements, and to report to him if anything was to be done about them, and this agent knew of Kingsbury's unlawful sales soon after they commenced, but did not report the fact to the plaintiff.

The parties conceded that it was the intention and understanding that Nahum Reed should only be liable as surety on the lease; and the latter contended that the facts and the doings of the plaintiff, as above set forth, discharged him from his liability. But the judge ruled otherwise, and found for the plaintiff for the balance of the rent due, with such reasonable charges as the plaintiff had proved for cleansing and repairing the premises after he entered for breach of the conditions of the lease.

The defendant alleged exceptions.

*E. Avery*, for the defendant. The plaintiff cannot maintain

his action upon his pleadings.  *Hall* v. *Gould*, 3 Kernan, 127. Nahum Reed was merely a surety, and was discharged by the assignment of the lease without his knowledge.  *Brewer* v. *Knapp*, 1 Pick. 332.  *Patten* v. *Deshon*, 1 Gray, 330.  *Hamerton* v. *Stead*, 5 D. & R. 206.  *Rees* v. *Berrington*, 2 Ves. 540.  *Law* v. *East India Co.* 4 Ves. 833.  *General Steam Navigation Co.* v. *Rolt*, 6 C. B. (N. S.) 584.  *Rathbone* v. *Warren*, 10 Johns. 591. *Colemard* v. *Lamb*, 15 Wend. 332.  The agreements of December 1st created a new tenancy.  *Thomas* v. *Cooke*, 2 Stark. R. 410. *Murray* v. *Shave*, 2 Duer, 182.  *Whitney* v. *Meyers*, 1 Duer, 266. *Nicholls* v. *Atherstone*, 11 Jur. 778.  For rent and charges after May 8th the plaintiff cannot recover.  *Burn* v. *Phelps*, 1 Stark. R. 94.  *Randall* v. *Rich*, 11 Mass. 494.  *Dodd* v. *Acklon*, 6 Man. & Gr. 672.  *Twynam* v. *Pickard*, 2 B. & Ald. 105.  *Badeley* v. *Vigurs*, 4 El. & Bl. 71.  *Stavely* v. *Allcock*, 16 Ad. & El. 636. The unlawful use of the premises by Kingsbury discharged Nahum Reed.  Gen. Sts. *c.* 87, § 8.

*R. M. Morse, Jr.*, for the plaintiff, cited 1 Washburn on Real Prop. 328 ; Theobald on Prin. & Surety, §§ 87, 164.  *Fletcher* v. *M'Farlane*, 12 Mass. 43 ; *Salisbury* v. *Hale*, 12 Pick. 420 ; *Damb* v. *Hoffman*, 3 E. D. Smith, (N. Y.) 361 ; *Doe* v. *Bancks*, 4 B. & Ald. 401 ; *Rede* v. *Farr*, 6 M. & S. 121 ; *Roe* v. *Galliers*, 2 T. R. 133 ; *Hall* v. *Gould*, 3 Kernan, 127 ; *Malins* v. *Freeman*, 4 Bing. N. C. 395.

Bigelow, C. J.  We are unable to see how the right of the lessor to recover is in any essential degree affected by the fact that the party who defends this action is described in the lease " as surety."  He is a joint lessee of the estate ; the demise is to him as well as to the other lessee, and he jointly covenants to pay the rent and to perform all the other stipulations to be observed and kept by the lessees.  It may be that by the description of one of the lessees as surety the lessor is to be deemed to have notice that the relation of principal and surety subsists between the lessees, and that thereby an implied obligation is assumed by him to make no new agreement with the principal and to do no act the legal effect of which would be to change the position of the surety or in any way to impair his

rights as against the principal. But conceding this, and it is the view most favorable to the defendant, it is clear that he is still absolutely liable as lessee and bound to perform all the covenants in the lease, and that he can make no defence to this action, unless he can show that the lessor has absolved him by such a course of dealing with the principal as to affect injuriously his rights as against the principal, or by his conduct in reference to the demised premises, or in some other way has released him from his liability under his covenants. We are then to look at the facts disclosed at the trial to see whether any such grounds of defence are maintained.

It is contended on the part of the surety that the assignment by the principal lessee of all his interest in the lease to Kingsbury on the first day of December 1860, taken in connection with the assent thereto of the lessor and the acceptance by him of an agreement by the assignee to pay the rent and perform the other covenants in the lease, together with the additional agreement by two persons to guarantee to the lessor and to the lessees the performance by said Kingsbury as assignee of all the covenants of the lease, operated either as the substitution of a new tenant in place of the original lessees or as a surrender of the original lease and the creation of a new term; and that in either view the defendant is not liable in this action. But it seems to us that this position is not warranted by a fair and just interpretation of the written agreements of the parties. As they all bear date on the same day, and relate to one and the same transaction, the presumption is that they were executed and delivered together. They are therefore to be regarded, in interpreting the language which they contain, as one instrument. It is to be borne in mind that a mere assignment of a lease by a lessee does not absolve him from liability. He cannot by his own act avoid his covenants. Although a lessor may have a remedy against an assignee of the lessee for accruing rent and for a breach of the covenants contained in the lease, for which such assignee is liable by virtue of the privity of estate created by the assignment and by his entry upon and possession of the demised premises, the lessee still remains liable to the lessor in

like manner as if no assignment had been made, by virtue of his contract, which continues in force notwithstanding he may have parted with his interest in the estate. *Wall* v. *Hinds*, 4 Gray, 256, 266. Doubtless it is competent for a lessor to enter into such stipulations with an assignee as to accept him as sole tenant, and to absolve the original lessee from his contracts. But an intent to create a new contract and to annul the lease as against the original lessee must be clearly shown; otherwise the rule of law by which the lessee and the assignee will both be held liable to the lessor must prevail. There are cases where an express agreement by an assignee to pay rent to the lessor and to perform all the covenants of a lease, if assented to and received by the latter, would be evidence tending to show a substitution of the assignee in the place of the original lessee, and an intention to discharge the lessee from all further liability under the lease. *Patten* v. *Deshon*, 1 Gray, 325, 330. But no such intent is shown in the present case. On the contrary, it is clear that the parties understood that the original lessees were to remain liable on their covenants to the lessor. They took an express stipulation from the persons who signed the contract of guaranty for the assignee that they would be responsible to the lessees and to each of them as well as to the lessor for the faithful performance by the assignee of all the covenants in the lease. Such a guaranty would have been useless to the lessees, if they were thereafter to be relieved from all liability to the lessor. It seems to us, therefore, that there was no substitution of a tenant in the place of the original lessees, nor was it intended by the parties to create a new tenancy or a new term by the contract into which they entered on the 1st of December 1860. In legal effect the transaction was nothing more than an assignment of the lease by one of the joint lessees with the assent of the lessor, to which was added a guaranty in behalf of the assignee for the faithful observance by him of the stipulations in the lease. We cannot see how this contract can operate to discharge the surety. The assignment did not affect his legal obligation to the lessor. That was the act of the other lessee, and was one of the legal incidents of the contract into which

the surety entered on becoming a lessee. The lessor had entered into no stipulation, either express or implied, that the lease should not be assigned by one of the lessees, nor that he would not give his assent to such an assignment. Indeed, there is nothing to show that the lessor in giving his assent to it knew that it was made without the knowledge or sanction of the other lessee. Nor is this all. A strong implication that an assignment by the lessees or one of them might be made with the assent of the lessor arises from the clause in the lease which provides that the lessees should make no lease of the estate nor underlet the same except with the approval of the lessor in writing. This is a stipulation on the part of the lessees. It was inserted for the benefit of the lessor. It imposed no restriction on his legal rights as lessor, but it bound the lessees to make no assignment of their interest without his assent. With such assent, the right of the lessees or either of them to assign would seem to be clearly implied. The assignment and the assent thereto of the lessor were therefore in accordance with the legal rights of the parties under the lease, and could not operate to release the surety. This was the whole of the contract entered into by the parties on December 1st 1860, except the taking of the guaranty. This can furnish no ground of defence to the surety, because it would be absurd to say that the assent by the lessor to receive additional security for the payment of the rent and the observance of the covenants in the lease operated in any way to the prejudice or injury of the surety.

But it is contended that if the lease continued in force after December 1st 1860 as against the surety, it was annulled and rendered void by the use of the premises subsequently by the assignee for the unlawful sale of spirituous liquors, under Gen. Sts. *c.* 87, § 8, and that the surety was thereby discharged from all further liability. This ground of defence proceeds on a misconception of the purposes of the statute. The sole object of the enactment was for the benefit and protection of the lessor, to enable him to get rid of a tenant who was using the demised premises for an unlawful purpose, and to avoid the penalty imposed by the following section on a lessor who

knowingly permits his estate to be occupied for a purpose pro-hibited by law. It would be a perversion of the plain intent of the statute to construe it as affording a ground of defence to a claim for rent of premises under a lease which was not made with any design on the part of the lessor that they should be appropriated to an illegal use. Besides, there is no evidence in the case to show that the plaintiff had any such knowledge of the mode in which the estate was occupied by the assignee as to make him a participator in the unlawful use of the prem-ises by the tenant. To deprive the lessor of his right to recover rent, it would be necessary to show actual and not merely con-structive knowledge of the illegal occupation of the demised premises.

It is further objected by the tenant that he cannot be held liable for rent of the premises after they were taken possession of by the lessor on the 8th of May 1861. But the answer to this objection is, that such right to reënter the premises and to re-let the same at the risk of the lessees was expressly reserved by the lease, and that it appears by the paper signed by the assignee that the lessor entered under this clause. We can see no reason why this entry was not lawful. It was made after due demand of the rent on the premises of the person occupy-ing them under a legal assignment. This fact is stated in the exceptions, and appears by the statement contained in the sur-render of the premises made by Kingsbury at the time the lessor made his entry. After such entry lawfully made, the plaintiff, acting in good faith, had a right to incur expense for repairs, and to re-let the premises at the risk of the lessees. Such is the express stipulation contained in the lease. The defendant is therefore liable for whatever balance may be due to the plain-tiff for the residue of the term, after making all proper deduc-tions for sums received for rent of the premises from persons to whom they were re-let by him.

We have not considered the objection to the form of the dec-laration which was raised at the argument, because it is not open on these exceptions. If the defendant intended to rely upon it, he should have made it at the trial. *Wall* v. *Providens Inst. for Savings,* 3 Allen, 96. *Exceptions overruled.*