## FIFTY ASSOCIATES *vs.* JAMES J. GRACE.

Suffolk. ,March 21. — July 30, 1878.   COLT & MORTON, JJ., absent.

A lease to A. contained covenants to pay rent, for use and occupation of the " premises for and as a dry goods and millinery store," and that no assignment of the same should be valid without the consent in writing of the lessor. A. assigned the lease to B. with such consent, and B., with such consent, but without the knowledge of A., assigned the lease to C., to use and occupy the premises as a dyehouse office. *Held*, that A. was released from liability to pay rent during C.'s occupation.

CONTRACT for the rent of certain premises on Washington Street, in Boston, and for the cost of steam heat supplied to the same.

The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on an agreed statement of facts in substance as follows:

On January 3, 1872, the plaintiff and the defendant executed an indenture of lease of the premises for the term of five years from February 1, 1872, by the terms of which the defendant covenanted to pay to the plaintiff the rent at a certain rate " during said term, and at that rate for such further time as the lessee, or any other person or persons claiming under him, shall hold the said premises or any part thereof;" to " use and occupy the premises for and as a dry goods and millinery store;" to pay "the cost of the steam heat supplied said shop;" and not to " assign this lease nor underlet the whole or any part of the said premises," " without the written consent of the lessor or of those having its estate in the premises," the lessor to have the right to enter upon the premises and determine the lease upon the breach of any of these covenants.

On October 3, 1872, the defendant assigned his interest in the lease, in writing, under seal, to Sarah and Solomon Milkman, upon condition that they should pay the rent and for the steam heat, and perform the covenants of the lease and save him harmless therefrom; and they also in writing, under seal, agreed so to do, and to "use and occupy said premises for the millinery business and sale of hair goods." The plaintiff consented in writing to the assignment, provided such consent should not invalidate the claims which it had or might hereafter have against the defendant if he had not assigned. The defendant there

upon left the premises, and Sarah and Solomon Milkman en-
tered upon and occupied the same. On December 2, 1872, Sarah
and Solomon Milkman assigned in like manner their interest in
the lease to Richard S. Sibley, who agreed in like manner to
perform all the covenants of the lease, and to "use and occupy
said premises as an office of the Boston dye-house." The plain-
tiff consented in writing to the assignment to Sibley, providing
that such consent should not invalidate any claim it would have
against Sarah and Solomon Milkman as assignees of the lease,
if they had not assigned. The latter thereupon left the prem-
ises, and Sibley entered and continued in occupation thereof
until March 22, 1877.

The assignment of Sarah and Solomon Milkman to Sibley, the
contract of Sibley to occupy the premises, and the written con-
sent of the plaintiff, the occupation of the premises by Sibley,
and the leaving of the premises by Sarah and Solomon Milk-
man, were without the knowledge or consent in any way of the
defendant, who was not aware that Sibley was occupying the
premises until January, 1877, when the plaintiff's agent informed
him that Sibley had not paid his rent.

The rent for the months ending November 1, December 1,
1876, and January 1, February 1, March 1, and the fraction of
a month ending March 22, 1877, with the cost of steam heat
supplied, has never been paid, and the same was demanded of
the defendant after the last date and before suit.

The defendant never paid any rent, nor was any demand made
upon him for rent of the premises from the time of his assign-
ment to Sarah and Solomon Milkman, except as before stated,
after the termination of the lease and occupancy of Sibley. Sib-
ley paid rent to the plaintiff for the occupation of the premises
from December 2, 1874, to the month ending November 1, 1876.

Upon the foregoing facts, or such of them as were admissible
in evidence, judgment was to be entered for such sum, if any, as
the court should determine to be due from the defendant to the
plaintiff; otherwise, judgment for the defendant.

*E. D. Sohier & C. A. Welch*, for the plaintiff.

*T. F. Maguire*, for the defendant.

ENDICOTT, J. By the terms of the original lease, the defend-
ant covenants and agrees with the lessor that he "will use and

occupy the premises for and as a dry goods and millinery store." It is clear that he could not use it for any other purpose, and, upon breach of this covenant, the plaintiff could reënter, as provided in the lease. The lease also contains the covenant that the defendant will not lease or underlet the premises without the written consent of the plaintiff or those having its estate. The assignment to the Milkmans was made by the defendant with the written consent of the plaintiff, and they agreed to occupy and use the premises for the millinery business and sale of hair goods. Whether this was a change in the occupation prescribed by the lease is immaterial ; if it was, the defendant's liability on the covenants to pay rent would continue, for his assignment was assented to by the plaintiff with the express stipulation that its claim against him should not be affected by the assignment and its assent thereto.

But by the assignment to Sibley by the Milkmans, to which also the plaintiff consented in writing, Sibley was to use and occupy the premises as an office for the Boston Dye House. This was a new and different occupation of the premises, and Sibley having been allowed so to use and occupy with the assent of the plaintiff, and without the assent or knowledge of the defendant, the defendant was released from liability on the covenant to pay rent, certainly while such occupation continued, for he had covenanted to pay only according to the terms of the lease.

It is contended by the plaintiff that the covenant to use the premises for a millinery store was for the benefit of the lessor, and could be waived. This may be true while the defendant was in occupation ; but, after he had parted with the estate, though still liable on his covenants to pay rent, a new contract could not be made in regard to the purpose for which the premises should be used, without his consent, given in such a manner and under such circumstances as to show that he was still to be held liable under his lease.

The effect of the assent by the plaintiff to the assignment to Sibley, for a different use and occupation, was to create a new tenancy inconsistent with the terms of the lease to the defendant, and his liability for rent, while such tenancy continued, ceased. See *Amory* v. *Kannoffsky*, 117 Mass. 351, and cases cited.                              *Judgment for the defendant*