## Niestadt v. Joseph et al.

[No. 11,614. Filed May 11, 1923. Rehearing denied October 4, 1923. Transfer denied April 4, 1924.]

1. Landlord and Tenant.—*Lease.*—*Mutuality of Provisions.*— *Termination by Tenant.*—A lease of a business room which had been occupied by the lessees, or their assignors, for eleven years, under a lease which contained a provision that if the windows in the north wall should be closed or rendered useless or the light obstructed, the tenant could terminate the lease without liability to the landlord, which provision was inadvertently copied into the subsequent lease, the windows having been closed during the original term, which fact was

known to both parties at the time of executing the second lease, and it was then agreed that the window clause therein was of no effect, was held to be valid notwithstanding said provision, as the parties had decided for themselves that it was a nullity.   p. 361.

2.   LANDLORD AND TENANT.—*Lease.*—*Mutuality of Provisions.*— *Termination by Tenant.*—A provision in a lease giving the lessee an optional right to terminate the lease on the happening of certain contingencies, without a corresponding right in the lessor, will not invalidate the lease, the requirement of mutuality in a contract not meaning that every duty imposed on one of the parties thereto must be based on a correlative obligation to accept the performance of such duty, it being enough to give mutuality to a contract if there is a consideration on both sides for its performance.   p. 361.

3.   LANDLORD AND TENANT.—*Fixtures.*—*Removal by Tenant.*— *When Become Part of Freehold.*—In the absence of an agreement to the contrary, improvements in the nature of "fixtures" made by the tenant become a part of the freehold, and although the original lease of a business room gave the tenant the right to make alterations and additions to the interior thereof and to remove them at the expiration of the term, a subsequent lease, omitting such provision, would not authorize the removal of fixtures and improvements added during the original term, they having become a part of the freehold at the expiration of that term.   p. 363.

4.   LANDLORD AND TENANT.—*Alteration in Premises.*—*By Tenant.*—Where a lease of a business room provided that the lessee might make alterations and additions to the interior of the room, with the right to remove such alterations and additions at the expiration of the term, the lessee was authorized to make only such alterations as could be removed and which were not actually injurious to the property, and did not include the cutting of a hole twelve by eighteen feet in a wall of the room, removing a vault or selling the vault door.   p. 364.

5.   LANDLORD AND TENANT.—*Damage to Property by Tenant.*— *Recovery Before Expiration of Term.*—A landlord is not required to wait until the termination of the lease to seek redress for damage to the property caused by the tenant making unauthorized alterations therein, as an immediate wrong was done which was, at once, the subject of redress.   p. 364.

From Montgomery Circuit Court; *Jere West,* Judge.

Action in ejectment by Johanna C. Niestadt against Charles Joseph and others. From a judgment for plaintiff for damages only, she appeals.   *Affirmed.*

*W. J. Sprow,* for appellant.

*Chase Harding,* for appellee.

NICHOLS, C. J.—This action in ejectment was by appellant against appellees, all of whom other than appellee Joseph, hereinafter mentioned as appellee, have no interest in this action and will not be further mentioned.

As there were special findings of fact, and as no question is presented as to the pleadings, we do not need to set them out.

The findings of fact are in substance, so far as here involved, that: Appellant was the owner of the real estate here involved and on March 16, 1903, by written lease rented the same to Andrew S. Clements and Frank C. Evans for five years. Said lease contained a provision that in the event the windows then existing in the north wall of said premises should be closed up or rendered useless, or the light obstructed, then the lessees would have the right to terminate the lease without becoming liable for damages on account thereof, and the failure of said parties to exercise such option should not be deemed a waiver on their part. Said lessees were to have the right to sublet all or any part of the premises described in said lease, and to make alterations and additions to the interior of said room with the right to remove such alterations or additions at the expiration of said lease. Pursuant to said lease, the said lessees took possession of the real estate at the time specified therein. On June 6, 1907, Clements purchased the interest of Evans in the partnership and became the sole owner thereof, and operated said business as the Clements Company; the said Evans assigned all his right, title and interest in said lease to said Clements, who remained in possession for the five-year period named in said lease, and continued to hold the same without any new contract until June 15, 1914, when

another lease and contract was entered into between appellant and said Clements. Sometime between the time of taking possession of said real estate by said Clements and before the expiration of the five-year term, as specified in the first lease, either the said Clements or the said firm of Clements and Evans, while a tenant of appellant, constructed a large brick vault in the brick building on said real estate. It was built from the bottom of the basement and was so constructed that the south wall of said building was made the south wall of the said vault. No contract was ever made for the removal of any of the improvements made by any of the tenants, except such as contained in the written contract and lease so made and executed on March 16, 1903, and the one which hereinafter will be referred to as, and which was, executed on June 15, 1914. In the lease entered into March 16, 1903, there was a provision that the lessees should have the right to renew for an additional period of five years by giving notice in writing of their intention to renew ten days prior to the expiration thereof. No notice was ever given of such intention until June 15, 1914, at which time, a written contract and lease was entered into between appellant and said Clements, which lease was for fifteen years, and on the same terms and with a similar provision as to windows as in the lease of March 16, 1903. This lease provided that the lessee should use said premises in a careful and tenant-like manner and should keep them in good repair during the term of the lease, and that he should have the right to sublet all or any part of the premises during the life of the lease. While said original contract was in force, and between May 1, 1903, and May 1, 1908, all of the said windows in the north wall of the building situate on said premises, being all of the windows referred to in said contract, were, by mutual consent and understanding of all the

parties, entirely closed and walled up by brick, so that the north wall of said building was a solid and continuous brick wall. No complaint of any kind was ever made by any one on account of said windows being so closed up and the light being obstructed and shut out, but all the parties understood that the shutting up of said windows was a permanent matter, and that the same would never at any time be opened, and no claim was ever made by any tenant, or any of the parties to said contract, of the right to terminate said contract of renting or of the right to vacate said premises by reason of said windows being so closed, and all persons who have rented said premises at any time since said windows were so closed up understood that the same were permanently closed. From the time said contract was assigned to the said Clements by Evans, said Clements continued to occupy said premises with said windows so closed up to the time of the expiration of said five years named in said contract, and he then continued to occupy said premises by holding over, without any additional contract, until the written contract was entered into on June 15, 1914, after which he so occupied said premises under said last written lease until the said lease was duly assigned to the Clements Company, and the said Clements Company continued so to occupy said premises under said written lease until the same was assigned to appellee; each and all of said tenants, at the time they became interested in either of said leases, and before they accepted or in any way became bound thereby, and at all times while they were occupying said premises, understood that said windows were so closed up, and that no light of any kind could or would come through the same, but that the light was permanently and entirely shut out. When the contract and lease of June 15, 1914, was prepared, the same was copied from the contract and lease of March 16, 1903,

by said contract and lease being handed to a stenographer in said office, with direction to copy the same, with the exception of the time it was to run and the date and time it was to commence, and said contract and lease was practically so copied, including the provision as to the windows. Both parties knew that the provision as to the closing of said windows was of and concerning a matter that had no existence and could never exist, and referred to the happening of an event which would not and could not happen; both the parties knew that said provision was in said contract and lease at the time it was signed, and the same was spoken of, but the said Clements assured the appellant at said time that said provision amounted to nothing and would never give any trouble, and said contract and lease was signed by said parties with said understanding, and the successive assignees, including appellee, had the same understanding. On December 28, 1920, notice in writing was served by appellant upon appellee to vacate said premises on or before June 15, 1921, but he refused in any way to yield possession thereof. Appellee, after taking possession of the property, repaired the same by plastering and papering, and by repairing the floor; expending thereon the sum of $400, all of which was without any authority, except such as given in the written contract of June 15, 1914, but did no damage. Said appellee also made an opening in the north wall of the said building and through the south wall of his building, so as to connect the two rooms, which opening was approximately twelve feet by eighteen feet; that said opening was finished in a good workmanlike manner, but it was in no way a benefit to appellant's room, and the cost of closing the same would be $94. Appellee also removed the vault and sold the vault door for $25; it is worth $300 to replace the brick part of said vault; all of which alterations

were made without asking the consent of appellant, except such consent as was given by the lease of June 15, 1914. The vault and wall so removed could be replaced at any time by appellee without injury to appellant's business room.

On these findings of fact, the court stated its conclusion of law No. 1 that the contract in question was binding upon appellant and appellee, who was entitled to hold possession of the premises in question, and that, on this issue, the judgment should be against appellant; and its conclusion No. 3, that appellee had no right to cut an opening into the north wall of the room, and that appellant was entitled to recover $94 damages sustained by reason of such opening. That appellee had no right to sell the door of the vault, and, for this, appellant was entitled to recover $25; that appellee had no right to remove the vault, and that appellant was entitled to recover from him, because of such removal, $300, making the total amount of recovery for changes in the building in favor of appellant, $419. Judgment was rendered upon these conclusions, from which judgment this appeal is prosecuted, appellant assigning as error the action of the court in overruling her motion for a new trial, and in stating its conclusion of law No. 1. Appellee has assigned cross-error upon the court's conclusion No. 3.

Appellant says that the question which she intends to present by this appeal is the validity of the lease entered into between appellant and Clements on June 15, 1914. This question is presented by the special findings and conclusions of law, and we, therefore, give no attention to the motion for a new trial. Appellee is holding possession of the real estate described in such lease by virtue of the assignment of the same to him. Appellant challenges the validity of the lease because of the provision therein

with reference to the closing of the windows, and concedes that if the lease is valid, appellee is rightfully in possession. We confess that we have difficulty in comprehending appellant's arguments and especially her argument that the lease of June 15, 1914, was void for want of mutuality. But we have no difficulty in determining that there was ample consideration for the execution of the lease, and that it was valid regardless of the provision with reference to the windows, which, under certain conditions, gave the lessee the right to terminate the tenancy without giving a reciprocal right to terminate to appellant. Applying the terms of the lease to its subject-matter, as the court had a right to do, the court found that the windows involved had been closed several years before the execution of this last lease, and that, at the time, there were no windows to be closed, a fact known to both parties, and such fact being mentioned, after a statement that the provision amounted to nothing, both parties signed the lease. By their own construction, the provision was a nullity, and without any influence whatever in determining the validity of the lease. When applied to the existing conditions, it was an unconditional lease for a term of fifteen years. There was no appearance of a tenancy at will, or from year to year. But, had there been, at the time of the execution of the lease, windows which might be closed, the provision giving the lessee a right to terminate without a corresponding right in appellant would not have invalidated it. The rule that must govern is thus stated in *Jordan* v. *Indianapolis Water Co.* (1902), 159 Ind. 337, on p. 345: "The requirement that there must be mutuality in a contract does not mean that every duty imposed upon one of the parties to it must be based on a correlative obligation to receive the performance of such duty, and discharge the burden that devolves upon him under the

contract in case such duty is performed. It is enough to give mutuality to a contract that is entire in its character if there is a consideration on both sides for its performance." ·

We hold that the lease of June 15, 1914, was a valid instrument, and that appellee was, at the time of the commencement of this action, rightfully in possession of the real estate described therein, by virtue of the assignment thereof to him.

It was expressly provided in the first lease, as well as in the second, that the lessee should have the right to make alterations and additions to the interior 3. of the room rented and to remove such alterations or additions at the expiration of the lease. Sometime within the five-year term of the first lease, the lessee constructed the vault involved in this action and continued to use the same during the entire time and until the date of the termination of the lease, and, thereafter holding over, he continued to use the same from year to year until June 15, 1914, more than six years after the termination of the first lease, at which time, he entered into a new contract or lease for fifteen years with appellant which, as aforesaid, was thereafter assigned to appellee.

It is to be observed that the lessee had a right to remove the vault which he had constructed as an alteration or addition to the room rented, at the termination of his lease. Holding over without any new contract, he became a tenant from year to year. Whether his rights, including the right to remove the vault, were determined by the terms of the original lease except as to time we do not need to decide, but see *Habich* v. *University Park Bldg. Co.* (1912), 177 Ind. 193, 97 N. E. 539; *Ridgeway* v. *Hannum* (1902), 29 Ind. App. 124, 64 N. E. 44. We have now, however, a new lease, not by virtue of any rights reserved in the original lease,

for there was no right of renewal except at the expiration of the original lease, which lease had terminated more than six years before, but with terms independent of the former lease, creating a new tenancy, and reserving no right as to improvements made under the former lease. Such improvements, in the absence of an agreement to the contrary, became a part of the freehold. *Hedderich* v. *Smith* (1885), 103 Ind. 203, 53 Am. Rep. 509.

Appellee does not contend that he had a right to remove improvements made under the former lease. He makes no point that he had a right to remove the vault or to make the opening in the wall. His sole and only contention is that the lease gave him a right to make alterations and that the removal of the vault and making the opening in the wall were alterations which he had a right to make. Where, as here, there is an express covenant in a lease regarding alterations, the lessee is authorized to make only such alterations as are included within the covenant, and as are not actually injurious to the premises. *Agate* v. *Lowenbein* (1874), 57 N. Y. 604; *Hasty* v. *Wheeler* (1835), 12 Me. 434. But the alterations that were provided for in the lease under consideration are such alterations as could be removed at the expiration of the lease. Clearly, an alteration by cutting a hole twelve feet by eighteen feet in a wall of the room leased, or by removing the vault, or selling the vault door, would not come within the provisions of this lease. Appellee having gone beyond the rights to make alterations given to him by the lease may be at once compelled to make satisfaction for the damages resulting from the waste committed by him. Appellant, under such circumstances, is not required to wait until the end of the lease, for appellee having gone beyond his rights, an immediate wrong was done which was at once the sub-

ject of redress. *Agate* v. *Lowenbein, supra.* It, therefore, follows that the court's conclusion of law No. 3 was correct.

The judgment is affirmed.