ANTONIO R. CARRANO *vs.* PHILIP SHOOR ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 6th, 1933—decided February 6th, 1934.

*William S. Locke,* with whom, on the brief, was *Ralph O. Wells,* for the appellant (plaintiff).

*Reuben Taylor,* for the appellant (named defendant).

MALTBIE, C. J. The plaintiff brought this action seeking a declaratory judgment that the defendants were liable to pay him rent under the covenants of a certain lease, to reimburse him for certain taxes paid by him upon the leased property and to restore a party wall between that property and the one next adjoining. The trial court gave judgment upon all the issues in favor of the plaintiff, but held that the defendants were liable to pay rent in a smaller sum than specified in the lease. The defendant Shoor, whom we shall hereafter refer to as the defendant, has appealed from this judgment upon the ground that he is not liable in any of the respects claimed by the plaintiff, and the plaintiff has appealed upon the ground that he is entitled to a higher rental than that fixed by the court. The facts found by the trial court and not disputed present the issues involved in the appeal in most of their aspects. Both the plaintiff and the defendant

have sought changes in or additions to the finding and these we shall consider, so far as is necessary, in connection with the questions to which they are relevant. We do not, however, consider most of the additions sought by the defendant; while the plaintiff in his brief has discussed them painstakingly, the defendant only refers to most of them in a very cursory way; we conclude that they are not seriously pressed.

The plaintiff and the defendant owned adjoining buildings, each four stories high and separated by a party wall. On December 10th, 1924, and for some time before, the defendant had occupied both buildings, conducting in them a furniture business, and had cut doorways through the party wall on each of the three upper floors, so that he might use both buildings as a single store. By a written lease executed on December 10th, 1924, with a supplemental agreement made three days later, the defendant leased the plaintiff's building for six years from January 1st, 1925, upon the following terms: The rental was to be $7000 for the first year and $8000 for the next five years; the defendant expressly covenanted to pay these rents, as well as any increase in the amount of the taxes on the property above those assessed in 1924; he also covenanted to do no waste; the plaintiff agreed that he might make alterations in the premises, provided that, at the expiration of the lease, the building should be left in its original condition, reasonable wear excepted; and it was mutually agreed that the lessee might "renew" the lease for a further period of four years "under the same terms and conditions as above set forth" except that the rent would be $9000 for the first year and $10,000 for each of the other three years, provided the lessee "notified the lessor, in writing, sixty days before the expiration of the first term above

set forth, which notification shall in itself operate as a renewal of this lease for four years."

The defendant occupied the two buildings in the conduct of his furniture business until March 8th, 1926, when he sold the business to Kane and Bliss, assigned to them the lease of the plaintiff's building and leased his own building to them. The assignment of the lease of the plaintiff's building specifically included "certain rights of renewal" contained in it and conveyed to the assignees the unexpired portion of the lease, "with rights of renewals as stated in said lease, subject nevertheless to the rents, covenants, conditions and provisions mentioned in said lease and its supplement." The defendant's lease of his own building was for the term of nine years from January 1st, 1926, bringing its expiration to the same time that the lease of the plaintiff's building would expire should it be continued for the additional period provided in it; the rentals for the defendant's building were the same as those in the lease of the plaintiff for its original term and the further period it might run under the option given the lessor; and it contained similar provisions to those in the lease of the plaintiff's building and the agreement supplemental thereto. On March 18th, 1926, Kane and Bliss assigned both leases to Kane, Incorporated, a corporation, the name of which was later changed to Bradley's, Incorporated, sold to them the furniture business, and thereafter that corporation conducted that business in both buildings. About June, 1926, the corporation caused the party wall on the ground floor to be entirely removed, additional openings to be made through it on the three upper floors, and a large opening to be made through it in the basement. The plaintiff was not a party to any of the agreements between the defendant and Kane and Bliss and the first he knew of them was when

Kane, Incorporated, requested his permission to change the date on which monthly rentals had previously been paid; to this change the plaintiff agreed; the finding states that this change was from the twentieth of the month to the first and we assume by this is meant to the first of the next month. Thereafter the corporation paid the rents due under the lease of the plaintiff's building directly to him.

Early in 1929, the city condemned a strip of land across both premises, including the buildings, to a depth of some fourteen or fifteen feet, and damages were appraised to both the plaintiff and the defendant as owners of their respective freeholds and also to the corporation as owner of each of the leaseholds. Thereafter the plaintiff and defendant, acting together, employed an architect to prepare plans to remodel the front of the buildings and he did this. In these plans, instead of a separate doorway in each building, there was a single doorway in the middle and the buildings were given the appearance of a single store. The corporation made the claim that the condemnation of a portion of the buildings terminated the lease but both the plaintiff and defendant maintained that it did not, nor even result in a pro rata reduction of rent. After conferences between the parties, it was agreed by the plaintiff, the defendant, and the representatives of the corporation, that the leases should continue in force, the plans for remodeling the buildings should be carried out and that the plaintiff and the defendant would each grant a reduction of future rentals in the amount of $750 a year. Two agreements were thereafter entered into, one by the plaintiff and the corporation and the other by the defendant, Kane, Bliss and the corporation. These were executed simultaneously and were in substantially identical terms except that the agreement by the plaintiff contained a provision that

the option for a further period given in the lease of his property was thereby exercised and that the lease should be in force and binding for the full term until December 31st, 1934. Each agreement provided that the lease to which it referred should continue in force except as modified by the agreement, that the rentals should be reduced as had been agreed, that the structural changes planned by the architect should be made, that the lease should apply to the building as it would then be changed and that the corporation would make no claim against the owner on account of the condemnation.

The changes in the buildings were made and the corporation continued its occupancy of them. In the fall of 1931 it applied to the plaintiff for a further reduction in rent. The plaintiff and the corporation entered into a written agreement by which the former waived the $1000 increase in rental during the last three years of the term of the lease and also any obligation of the corporation to pay taxes upon the tax list of 1931 or thereafter. This agreement was expressly conditioned upon the defendant making a like reduction of rent under the lease of his building. He did thereafter make an agreement in substantially the same terms with Kane and Bliss. There was due to the plaintiff under his lease, on account of taxes on the list of 1930, $1407.11, of which the corporation paid him $507.11, but he has never been paid the balance. In June, 1932, the corporation sought a further reduction of rentals and the plaintiff agreed to reduce the rent of his building to $400 a month for one year from July 1st, 1932, and to accept monthly instalments upon the tax payments due him. In November, 1932, the corporation failed to pay the rent due the plaintiff and at the end of December abandoned the premises.

There can be no question that the option given the

lessee in the lease for a further period was one for an extension and not a renewal. Whether a provision operates as one or the other is a matter of intention, and the use of the word renewal is by no means conclusive. *Freiheit* v. *Broch,* 98 Conn. 166, 169, 118 Atl. 828; *Ackerman* v. *Laforese,* 111 Conn. 700, 704, 151 Atl. 159; *Johnson* v. *Mary Oliver Candy Shops, Inc.,* 116 Conn. 86, 89, 163 Atl. 606. The distinction between the two is chiefly that in the case of renewal a new lease is requisite, while in the case of extension, upon the performance of the stipulated acts, the same lease continues in force during the additional period. *City Coal Co.* v. *Marcus,* 95 Conn. 454, 111 Atl. 857; *Ackerman* v. *Laforese, supra.* The provision in the lease before us that notification to the lessor "shall in itself operate as a renewal of this lease" effectually fixes the nature of the option as being one for an extension and not a renewal. Shoor by his assignment of the lease to the corporation, with its specific inclusion of the right to the extension, gave to it the privilege of exercising that right and so bringing about an extension of the lease for the period specified. *Wall* v. *Hinds,* 70 Mass. (4 Gray) 256, 267; *Realty & Rebuilding Co.* v. *Rea,* 45 Cal. App. 673, 188 Pac. 621; *New York Business Building Corporation* v. *McCutcheon & Co.,* 243 N. Y. Sup. 255. There can be no question that the agreement by the plaintiff and the corporation, was in itself a proper exercise of the option and continued the original lease in force. The option agreement provided that the lease should be continued "under the same terms and conditions as above set forth" except as to the amount of rentals specified; and its extension would bring about a continuance of the defendant's covenant to pay the rent during the additional period it was to run.

What would have been the effect, in the absence of

an agreement by the parties, of the condemnation of a portion of the premises as regards either the continuance of the lease or the amount of rents payable, we have no occasion to consider. The taking of the portion condemned did not prevent the occupation of the remainder for the purpose of carrying on the business of the corporation. If it could have claimed that the condemnation gave it a right to terminate the lease or demand a reduction of rent, certainly it could waive that right. After the condemnation all parties agreed that both leases should continue in force, that reduced rentals should be paid under them, and the building should be remodeled; and this agreement was carried out. While the defendant was not a party to the written contract designed to carry out the plan as regards the plaintiff's building, he joined in the underlying agreement. Thereby he effectually waived any right he might have to claim any termination of the lease of the plaintiff's building by reason of the condemnation of the property or any reduction of rent other than that agreed upon.

This brings us to the question whether the dealings between the plaintiff and the corporation after the defendant assigned the lease of the plaintiff's building to the corporation released the defendant from his covenant to pay the rent and to reimburse the plaintiff for taxes. Ordinarily the assignment of the lease would not release the defendant from that covenant even though thereafter the plaintiff collected the rent from the assignee. *Grommes* v. *St. Paul Trust Co.*, 147 Ill. 634, 35 N. E. 820; *Harris* v. *Heackman,* 62 Iowa, 411, 412, 17 N. W. 592; *Wall* v. *Hinds,* 70 Mass. (4 Gray) 256, 266; *Hartz* v. *Eddy,* 140 Mich. 479, 481, 103 N. W. 852, 1 Tiffany, Landlord & Tenant, p. 962. The defendant contends, however, that after the assignment he became merely a surety as regards the payment of

the rent and was therefore released by the subsequent agreements made between the plaintiff and the corporation. It is true that after the assignment, it was the duty of the corporation to pay the rent and as between the defendant and it there existed a relationship in the nature of that of surety and principal. *Farrington* v. *Kimball*, 126 Mass. 313, 314; *McHenry* v. *Carson*, 41 Ohio St. 212, 221; 1 Tiffany, Op. Cit., p. 994. But that relationship did not extend to include the lessor; as regards him Shoor still remained a principal debtor by reason of his covenant to pay rent. *Baynton* v. *Morgan*, L. R. 2 Q. B. D. 74. Even though the agreements made between the plaintiff and the corporation might have been such as would release a surety for the rent of the property, they might not at all have that effect in the situation which existed. Thus, the defendant would not be released, upon the principle claimed, by the arrangement by which the plaintiff permitted the corporation to pay rent, instead of upon the twentieth of each month as had previously been the custom, upon the first of the next month. *Baynton* v. *Morgan, supra.* Nor would a reduction of rent agreed upon by the plaintiff and the corporation even without the knowledge of the defendant, in no way increasing the burden of the latter's covenants, under the principle of suretyship, have that effect. *Fisher* v. *Milliken*, 8 Pa. St. 111; *Wade* v. *March*, 39 Ohio App. 111.

Where a lessee assigns a lease and the lessor thereafter recognizes the assignee, with the latter's consent, as his immediate tenant, where, in other words, there is a novation and the lessor and assignee enter into a direct relationship of landlord and tenant, the lessee is released from his covenants in the lease. *Way* v. *Reed*, 88 Mass. (6 Allen) 364, 369; *Hunt* v. *Gardner*, 39 N. J. L. 530; *Barnes* v. *Northern Trust Co.*, 169 Ill.

112, 118, 98 N. E. 31; 1 Tiffany, Op. Cit., p. 964. This changed relationship may come about by operation of law, as where the lessor and assignee enter into an agreement for the use of the premises which would violate the covenants of the original lease. *Fifty Associates* v. *Grace,* 125 Mass. 161, 163; and see *Keeley* v. *Beenblossom,* 183 Iowa, 861, 864, 167 N. W. 638. But there is nothing in the transactions between the plaintiff and the corporation which would amount to such a termination of the covenant in the defendant's lease by operation of law. The fact that after the assignment the plaintiff collected the rents from the corporation would not bring about such a changed situation, because the corporation was primarily liable as between it and the defendant for those payments and collection from it would be· but giving effect to that principle; *Taylor* v. *DeBus,* 31 Ohio St. 468, 471; nor would the fact that the plaintiff permitted the rent for each month to be paid a few days later than had previously been the custom; for that circumstance is not inconsistent with a continued intent to look to the defendant for payment, should the corporation fail to pay, and, as far as the facts disclose, did not increase the burden upon the defendant by reason of his covenant.

As regards the agreements for a reduction of rent and the payment of taxes, the defendant was either a party or fully consented to the first two of them and he can hardly now claim that they constituted such a violation of the terms of the original lease as to terminate it and replace it by operation of law with a direct relationship of landlord and tenant between the plaintiff and the corporation. The reduction of rent made by the plaintiff in June, 1932, as far as the finding shows, was not made with the consent of the defendant nor did he participate in bringing it about and

we cannot add to the finding the facts requested by either of the parties. Despite the lack of such consent, however, we do not consider that this reduction in rent operated as matter of law to change the relationship of the parties. As we have before indicated, the corporation as assignee of the lease was the party primarily concerned in the payment of rents and the plaintiff was the party to whom they were to be paid. It was natural that negotiations as to its amount should be carried on directly between them. Their agreement for a reduction would not make the covenants of the lease more burdensome to the defendant and was not necessarily inconsistent with a continued liability on his part upon those covenants.

But the lessee may also be released by reason of an agreement between the lessor and the assignee, express or implied, that they are thereafter to stand in the direct relationship of lessor and lessee to each other. Here the intent of the plaintiff becomes important. *Golding* v. *Brennan,* 183 Mass. 286, 289, 67 N. E. 239. Whether there was an intent on his part to change the relationship of the parties presented a question of fact for the determination of the trial court upon the evidence and such reasonable inference as it might draw. *McDermott* v. *McDermott,* 97 Conn. 31, 34, 115 Atl. 638; *Union & New Haven Trust Co.* v. *Bartlett,* 99 Conn. 245, 252, 122 Atl. 105. The trial court has expressly found that the plaintiff at no time intended to release the defendant from his obligation upon the covenant to pay rent. The plaintiff directly testified to this effect and such testimony was proper. *Fox* v. *Shanley,* 94 Conn. 350, 362, 109 Atl. 249. But, coming as that testimony did from one of the parties and tending to prove an issue upon which he must prevail in order to recover, it would naturally be considered with care and tested by all reasonable inferences

to be drawn from the circumstances proven. We cannot, however, hold that the finding of the trial court was one which it could not reasonably reach. It is true that the plaintiff, after the assignment, not merely collected rent from the corporation but also dealt directly with it in making agreements as to reduction of rent and the like. The whole situation suggests very forcibly that after the assignment of the lease to the corporation neither the plaintiff nor the defendant considered at all whether the defendant continued liable upon the covenants of the lease and of course such a situation of nonintention cannot supply the intent to release the defendant necessary to enable him to escape liability upon his covenants. The finding of the trial court must stand and it is determinative that the defendant's liability under those covenants continued. *Barnes* v. *Northern Trust Co., supra.*

The lease contained a covenant that the lessee would do no waste, but it also provided that the lessee might make alterations in the leased premises provided that, at the expiration of the lease, they should be left in their original condition, without damage to them, reasonable wear excepted. The defendant contends that the openings in the party wall made by the corporation constituted waste. He seeks a finding that these were made with the consent of the plaintiff, but we cannot make this addition to the facts as found. He also apparently claims that the making of these openings was not within the permission given the lessee to make alterations and hence not within the provision requiring the restoration of the premises to their original condition.

The permission to make alterations was stated in broad terms. To give effect to it, standing by itself, would no doubt permit alterations in the premises amounting to common-law waste, and the two provi-

sions seem somewhat inconsistent with each other. We must, however, if possible, reconcile them. To carry out the intent of the parties we must construe the term waste as used in the lease, not in the broad common-law sense, but as qualified to the extent that acts which are authorized by the express terms of the lease are to be regarded as not constituting waste as that word is used in it. The permission to make alterations is not without its limitations. Thus, it is implied that no alterations should be made of such a nature that the building might not be restored to its original condition. Moreover, the building was rented for the purpose of conducting a furniture store and only alterations adapted to further that purpose are within the intent of the provision. *Woolworth Co.* v. *Nelson,* 204 Ala. 172, 85 So. 449. We can construe the two provisions so that they will be reasonably consistent if we interpret the covenant against waste as including any injuries to or changes in the building, amounting to waste as defined at common law, which are not within the fair purview of the permission given the lessee to make alterations. *Agate* v. *Lowenbein,* 57 N. Y. 604, 609; *Hasty* v. *Wheeler,* 12 Me. 434, 436.

Previous to the lease in question the defendant had occupied both buildings in the conduct of his furniture business; in order to adapt them for use as a single store he had cut a doorway through the party wall on each of the three upper floors; this was the condition when the lease involved in this action was made; it provided in terms for the use of the plaintiff's building for his furniture business; the making of the openings was for the purpose of adapting the buildings for use as a single store; and the plaintiff never, so far as appears, made any objection to them. Taking these facts into account, as well as the lack of any facts found or claimed that the party wall might not be re-

stored so that the building would be in its original condition, we cannot say that the trial court erred in holding that the making of the additional openings by the corporation was a permissible alteration and therefore within the covenant of the lease requiring the restoration of the building to its original condition.

It is not necessary to discuss the defendant's further claims of error. In so far as the rulings on evidence assigned as error are concerned, we have incidentally covered certain of them and the others do not require discussion. There is no error upon the defendant's appeal and therefore no need to discuss the plaintiff's bill of exceptions filed in connection with it.

The trial court held that the defendant was obligated to pay the rentals in the amounts fixed in the agreements between the plaintiff and the corporation reducing them. The plaintiff's appeal is based upon this portion of the judgment; he concedes that the agreement made as the result of the condemnation of a portion of the premises was binding upon the plaintiff, but contends that the other agreements were without consideration and therefore unenforcible. It is true that an agreement to reduce in the future the rents fixed in a lease must in general be supported by a consideration. *Wharton* v. *Anderson,* 28 Minn. 301, 9 N. W. 860; *Bowditch* v. *Chickering,* 139 Mass. 283, 288, 30 N. E. 92; *Coe* v. *Hobby,* 72 N. Y. 141; 1 Tiffany, Landlord & Tenant, p. 1055; note, 43 A. L. R. 1478. The agreement made in 1931 for a reduction of rent was expressly conditioned upon the defendant's making a like agreement with the corporation as regards the lease of his building and he did make such an agreement. The trial court has found that he did this knowing that the agreement between the plaintiff and the corporation would not become operative until he had executed a similar agreement and this finding

must stand. His action in so doing constituted a sufficient consideration, at least as far as he was concerned, to support the agreement for the reduction of the rent of the plaintiff's building. As regards the reduction of rent made by the plaintiff in June, 1932, for one year from July 1st following, no consideration supports the agreement and no facts are found to take the situation out of the general rule. It must, therefore, be held not to be binding. This agreement was not a waiver of sums then due but a promise to take effect in the future and cannot be supported upon the doctrine of waiver. It follows that there was error in the judgment in so far as the defendant was given the benefit of the reduction in rentals made by the plaintiff in June, 1932.

There is no error upon the defendant's appeal; there is error upon the plaintiff's appeal and the cause is remanded with direction to enter a judgment in all respects like that from which this appeal was taken, except that the words "July 1, 1933, inclusive at the rate of Four Hundred ($400.00) Dollars per month, and the rent falling due from August 1, 1933, to" are to be omitted in the two instances where they occur.

In this opinion the other judges concurred.