Chicago Title and Trust Company et al., Appellants, v. Jacob L. Kesner et al., Appellees.

Gen. No. 39,704.

O'CONNOR, J., dissenting.

Opinion filed June 30, 1938. Rehearing denied July 12, 1938.

WILSON & McILVAINE, of Chicago, for appellants; J. F. DAMMANN, K. F. MONTGOMERY and JOHN P. WILSON, JR., of Chicago, of counsel.

D'ANCONA, PFLAUM & KOHLSAAT, of Chicago, for certain appellees.

POPE & BALLARD, of Chicago, for certain other appellees; HERBERT POPE, BEVERLY B. VEDDER and FERRIS E. HURD, of Chicago, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

In a consolidation of the above entitled cases a decree of foreclosure was entered which, among other things, held that the sale of the properties foreclosed should be free and clear of certain long term leases which were decreed to be of no further force and effect. Plaintiffs appeal from so much of the decree as holds that the leases are not in full force.

Plaintiffs say that the leases at the time the foreclosure bills were filed were in full force and effect, as shown by the intention of the parties expressed in their writings, and that no acts of any of the parties worked a release from liability of the original lessees.

Defendants say that defendant Kesner became both lessor and lessee and that the liabilities under the lease were wiped out by merger, extinguishment and the rule of suretyship.

The properties in question consist of two lots, hereafter described as lots "A" and "B," on the south side of Adams street between State and Dearborn streets, in Chicago. The owners of the two lots are in effect the same. James Ross Todd was the owner of the fee of lot "A" and was a life tenant of lot "B" under the will of his father. Todd, hereafter referred to as the owner of the two lots, in 1909 made a 99-year lease of both

properties to Augusta Lehmann, Emilie W. Peacock, Edward J. Lehmann, Augusta E. Speis, Otto W. Lehmann and Edith M. Lehmann for a total annual rental of $20,000. These lessees will hereafter be called the Lehmanns.

In 1929 the Lehmanns wished to assign their interest in the lease to Jacob L. Kesner. Some question arose as to the validity of a lease of lot ''B'' in which Todd had only a life interest, so on petition the court appointed a trustee, authorized to execute a new lease to the Lehmanns for the unexpired term of the old lease.

May 20, 1929, the old 1909 lease was canceled and two new leases were made for the unexpired term, running to the Lehmanns. Both leases were identical except with reference to descriptions of the parties and the lots. Both leases provided that as security for the payment of the rents the lessees would erect a building on both lots at a cost of not less than $150,000, to be constructed and ready for occupancy not later than August 1, 1932.

The leases also provided that the lessees would deposit with the First Trust and Savings Bank, as trustee, $150,000 as additional security for the obligations of the lessees under the leases to construct the building, upon completion of which this amount was to be returned to the lessees. Both leases permitted an assignment by the lessees of their interest, with a provision that the original lessees should be released from further obligations thereunder provided the construction of the building above referred to was completed. The leases also required the lessees to keep all buildings located on the lots insured against loss by fire and to place all insurance policies with the First Trust and Savings Bank as trustee.

The new building provided for in the leases was not constructed at any time.

May 20, 1929, the interest of the Lehmanns in the leases was duly assigned to Kesner. In payment for this interest Kesner paid a certain amount in cash and the balance by his note for $400,000, made payable to the Lehmann estate. This was secured by a purchase money leasehold mortgage conveying the leasehold estates created by the leases, and providing for foreclosure and sale in case of default.

In February, 1930, after Kesner had been in possession of the property for nearly nine months, he negotiated with Todd for the purchase of the fees to the lots, and this was consummated by the execution and delivery of warranty deeds by the owners to Kesner. Each deed contained the provision that it was subject to the leases to the Lehmanns, expiring July 31, 2008, and all their other terms and conditions. At the same time the owners executed written assignments conveying to Kesner all the lessors' interest in the Lehmann leases. These assignments also conveyed the lessors' interest in and to all moneys and insurance policies deposited with the First Trust and Savings Bank.

Simultaneously with the execution and delivery of the deeds and assignments to Kesner, he delivered his notes aggregating $350,000 for the balance of the purchase price, and to secure them executed and delivered trust deeds to the Chicago Title and Trust Company as trustee conveying the fees. The trust deeds are also made subject to the leases from Todd to the Lehmanns for the term ending July 31, 2008. They also conveyed the rents, issues and profits. These are the trust deeds which are being foreclosed.

After Kesner acquired title to the fees the $150,000 deposited as security for the erection of the building heretofore referred to was withdrawn from the First Trust and Savings Bank by Kesner. There is no proof that plaintiffs knew this was done.

Kesner, thus being the assignee of the leasehold and also the owner of the fees, paid no rent.

August 6, 1932, defaults occurring in the payments of interest on Kesner's notes secured by the purchase money mortgages on the real estate, plaintiffs declared the entire debts due and the two foreclosure bills were filed and a receiver of the property was appointed.

Plaintiffs say the leases are in full force and effect. Kesner answered that the leases had been wiped out when he, as assignee, acquired the fees. The Lehmanns answered asserting, as Kesner did, that the leases had been extinguished, but that any claim or interest which they may have in the property ''arises out of the lease'' and that such claim is superior to the rights of the plaintiffs.

October 11, 1934, the cases were referred to a master in chancery who forthwith proceeded to take testimony. At a hearing in January, 1935, defendants introduced testimony that the promissory note for $400,000, representing part of the purchase price of the leasehold interest by Kesner from the Lehmanns, had on January 7, 1935, been presented by one of the Lehmanns owning the note to the Chicago Title and Trust Company, trustee under the purchase money mortgage of the leasehold estate, with a request that the trustee release the trust deed, which was done. The trust deed was released and canceled and the release recorded.

The Lehmann defendants in their brief admit that there was no formal cancellation of the leases, and that from May, 1929, when Kesner acquired the leasehold estate from the Lehmanns, to February, 1930, when he acquired the fee, both Kesner and the Lehmanns were liable for the rent; that ''The Lehmanns were liable by reason of privity of contract . . . and Kesner was liable by reason of privity of estate.'' This narrows the question as to the effect of the transaction whereby Kesner acquired the fees.

We hold that no merger resulted when Kesner, assignee from the Lehmanns, obtained the fee title to the properties, but that the writings of the parties executed at the time show it was their intention that the leases should continue in full force and effect.

Whether or not a merger takes place is largely a matter of intention of the parties. In *Hooper v. Goldstein,* 336 Ill. 125, 132, the court said:

"But a merger is not a necessary result of the union of the two estates in the same person. The intention and interest of the party who unites the two estates in himself will determine whether or not a merger takes place." In *Richardson v. Hockenhull,* 85 Ill. 124, 125, it was held that the question of merger "is always one of intention. The interest of the parties and intention are to be the controlling considerations." See also the recent case of *Continental Ill. Nat. Bank & Trust Co. v. Cunningham,* 291 Ill. App. 180, 186, in which the opinion quoted from *Moffet v. Farwell,* 222 Ill. 543, to the effect that whether a merger results from the uniting of two estates in the same person "depends upon what will best subserve the purposes of justice and the intention of the parties, and in determining the question the interests and intention of the parties are the controlling considerations."

Inspection of the warranty deeds and the trust deeds in connection with the conveyance of the fees to Kesner shows that each states that it is subject to the Lehmann leases, describing them in detail and as ending July 31, 2008; and in each of the trust deeds it was provided that, "it is specifically understood and agreed that until the above described lease shall be canceled and terminated" certain provisions with reference to insurance policies should not be effective. All of these provisions clearly express an intention that the leases should continue. The brief for the Lehmanns admits that no merger of the leaseholds and fees took place in

1930, when Kesner acquired the fees. This makes it unnecessary to further discuss this point, as the Lehmanns are the principal parties which plaintiffs seek to hold as lessees under the leases.

The position of the Lehmanns is, that the reason why there was no merger in 1930, when Kesner acquired the fees, was that they held Kesner's note of $400,000, secured by a mortgage trust deed upon the leasehold estates, and a leasehold estate cannot merge into a fee when there is an interest in the lease outstanding in a third person. It should be remembered that on January 7, 1935, at the request of the owners of Kesner's note, the trustee released the lien of the leasehold mortgage, although apparently the note itself was not canceled. The Lehmanns claim that this release had the effect of extinguishing the leasehold estates.

It would seem somewhat anomalous to say that removing a lien on a leasehold terminated the leasehold itself, but we understand the argument to be that the release of the lien removed the obstacle which prevented the operation of a merger of the leasehold and fee estates.

Counsel for defendants seem to assume that the only outstanding right or interest in the leasehold which prevented an extinguishment was their leasehold mortgage. There was another outstanding interest which also prevented this, namely, the interest of the trustee in the purchase money mortgages of the fees. As we have said, in these mortgages the continuation of the leases to July 31, 2008, was expressly contracted for.

When on August 6, 1932, these mortgages were in default and bills to foreclose were filed, the trustee became to all intents and purposes the owner of the fees. *Central Republic Trust Co. v. Petersen Furniture Co.,* 279 Ill. App. 492, 504. No subsequent acts of the parties could change its right to have the terms of the mortgages observed and there could be no extinguishment

of the leases by the acts of the Lehmanns. *Thomas v. Home Mut. Bldg. Loan Ass'n,* 243 Ill. 550, 559.

The Lehmann defendants contend that when Kesner drew down the securities deposited with the savings bank to secure the construction of the building, the contracts and the leases were modified without the knowledge and consent of the Lehmanns, lessees, who stood in the relationship of surety, and that they were thereby released.

This rests upon the erroneous assumption that where there is an assignment of a lease by the original lessee, he stands as surety for the assignee, and therefore any change in the contract releases the surety. The Lehmanns by assigning their leases to Kesner were not released from their primary obligation. The provisions of the leases clearly so indicate. An assignment could be made only in accordance with the terms of the leases; these provide that the original lessees are released from further liability to pay rent only when an assignment is made subsequent to the construction of the building referred to. The assignments were made prior to the construction of a building, and no building has ever been constructed. There is also provision for notice to the Lehmanns of any default under the lease after any assignment as long as they remain liable. The obligations of the leases are also made binding upon the lessees and their heirs. The primary obligation of the Lehmanns was not changed by that assignment.

Moreover, the withdrawal by Kesner of the deposits was with the authority of the Lehmanns. Kesner testified that the Lehmanns withdrew their original securities and that he substituted other securities of the same amount at the time the leases were assigned to him, so whatever Kesner did was with the authority of the Lehmanns.

Furthermore, the surrender of the securities was not made by the lessors. Defendants have stressed the assignment of the leases made by Todd, but these assignments had no greater effect, especially with reference to the securities, than the warranty deeds had.

Among the many cases holding that an assignment by a lessee of a lease does not change his obligation as a principal debtor, are *Carrano v. Shoor,* 118 Conn. 86, 171 Atl. 17; *Luthin v. Parodneck,* 140 N. Y. Misc. 129, 250 N. Y. S. 139; *Tenison v. Knapp* (Tex. Civ. App.), 64 S. W. (2d) 1071; *Kirby v. Tips* (Tex. Civ. App.), 67 S. W. (2d) 661; *Saulpaugh v. Hamilton,* 64 Col. 139, 171 Pac. 65; *Sutliff v. Atwood,* 15 Ohio 186; *Wade v. March,* 39 Ohio App. 111, 176 N. E. 687. No case has been cited and we find none where the rule of suretyship has been applied to wipe out the liabilities of the original lessee. We hold that the defense of suretyship cannot be maintained.

We are of the opinion that the leases are in full force and effect and that complainants are entitled to a decree so holding. This would put Todd and the Lehmanns in the same relative positions they were in before Kesner came into the picture. Foreclosure decree should be entered providing for a sale of the properties, namely, the fees, subject to the leases, with all the rights created by them. Plaintiffs also are entitled to an accounting as to the amount or amounts due and owing for rent under the leases, taxes and other payments contracted to be paid by the lessees in the leases, and plaintiffs are entitled to judgment for the amounts so found due against the lessees.

The judgment is reversed and the cause remanded with directions to proceed consistently with what we have held in this opinion.

*Reversed and remanded with directions.*

MATCHETT, J., concurs.

196

Mr. Justice O'Connor dissenting: I dissent, since no sufficient reason is shown that the right result was not reached by the chancellor.

A few of the controlling facts are that Todd executed 99-year leases on the two pieces of property to the Lehmanns, which leases do not expire until 2008,—about 75 years. Under the terms of the leases the Lehmanns deposited $150,000 of securities with the bank as a guaranty that they would construct on the lots a building costing $150,000, and when so constructed the securities were to be returned to them. The leases further provided that should the leases be assigned all the covenants and agreements of the leases would be binding on the assignee, and that after such assignment the Lehmanns would be forever released and discharged from all obligations of the leases after the completion of the building.

May 20, 1929, the Lehmanns sold and assigned their leasehold interest to Kesner. He made a down payment, the amount of which does not appear, and executed his note for $400,000, the balance of the purchase price, payable to the Lehmanns, payment of which was secured by a mortgage on the leasehold interest. At that time the Lehmanns withdrew the $150,000 securities theretofore deposited by them with the bank, and Kesner substituted other securities to the same amount. Kesner went into possession under the leases and 10 months thereafter, February 6, 1930, purchased the fee from Todd for $500,000,—$150,000 in cash, and trust deeds securing the balance of $350,000 which are here in foreclosure. At the same time Todd assigned his interest in the leases to Kesner. By the assignments, Todd and his wife, "being the owners of the lessor's interest . . . hereby sell, assign, transfer and convey" to Kesner their interest in the leases "for a term of seventy-nine (79) years and three (3) months . . .

together with the lessor's interest in and to said lease and the leasehold estate thereby created, *and in and to all moneys, securities and insurance policies on deposit with the First Union Trust and Savings Bank . . . .* trustee for insurance and deposits under said lease.'' Shortly after the purchase of the fee and the assignment of the leases from Todd, Kesner withdrew the $150,000 securities, insurance, etc., from the bank, as he was authorized to do by Todd, as shown by the assignment from which I have quoted.

After Kesner purchased the fee and took an assignment of the leases from Todd, obviously he paid no rent, being the owner of the leasehold and the fee; there was no rent to pay nor any one to whom it should be paid. The trust deed from Kesner securing the $400,000 mortgage on the leasehold conveyed not only the leasehold interest, but the rents, issues and profits of the property. The trust deeds from Kesner to Todd, of the fee, contained a similar provision. The Lehmanns had a lien of $400,000 on the property for about 75 years, which was prior to the lien of the $350,000 due Todd. But the effect of the majority opinion is to give Todd a first lien on all of the property, leasehold and fee, although not one cent has been paid on the $400,000 mortgage. Not only this, but the Lehmanns, in addition to losing their $400,000, are held liable for the rent. Such a result, in my opinion, is obviously wholly inequitable. The Lehmanns were, in my opinion, released of all liability under the leases when after the assignment by them to Kesner he took down the $150,000 as authorized by Todd.

A great deal is said in the briefs filed by able counsel for all parties, as to whether the 99-year leases were still in effect, or whether that interest had merged with the fee when Kesner purchased the property and took an assignment of the leases from Todd. Any discus-

sion of the law or the authorities "will plunge this branch of the law into a Serbonian Bog." *Landress v. Phoenix Mut. Life Ins. Co.*, 291 U. S. 499. It will also plunge court and counsel into a "Serbonian Bog."