## HOTEL BURNET COMPANY, Appellant v. UNION CENTRAL LIFE INSURANCE CO., Appellee.

Ohio Appeals, First District, Hamilton County.

No. 6280. Decided July 12, 1943.

Harmon, Colston, Goldsmith & Hoadly, Cincinnati, and J. Louis Kohl, Cincinnati, for appellant.

Dinsmore, Shohl, Sawyer & Dinsmore, Cincinnati, for appellee.

## OPINION

By ROSS, P. J.

This matter is presented to this Court on an appeal on questions of law and fact from the Court of Common Pleas of Hamilton county, wherein that Court sustained a demurrer of the defendant to an amended petition, and the plaintiff not desiring to plead further, entered judgment dismissing the amended petition.

The ground of the demurrer as filed in the trial court is that the amended petition does not state a cause of action. The amended petition contains allegations which develop the following facts.

The fee simple title to certain real estate involved in this litigation was originally in certain persons designated as the "Pike Trustees", who executed a perpetual leasehold of such estate, including a privilege of purchase, to Hinsch, Orr, and others, who, in turn, transferred such leasehold to the plaintiff.

Plaintiff thereafter executed to one Menke a lease of such leasehold estate and its interest in the real estate and certain hotel fixtures, furniture and equipment upon the premises, for a period of 31 years, and nine months, and ending on the 31st day of December, 1955.

By the terms of this lease to Menke, it is provided that during the last ten years of the lease period, to-wit: January 1, 1946 to December 31, 1955, the plaintiff will convey to Menke, his heirs and assigns "the said demised perpetual leasehold premises" by good and sufficient warranty deed, upon payment by Menke, his heirs, executors, administrators, or assigns of the sum of $25,000.00.

Menke thereafter executed an instrument whereby he granted, conveyed, assigned, transferred, and set over to the defendant "all his right, title, and interest in and to the said lease."

The defendant executed an "acceptance of the assignment of lease", agreed to perform the conditions and covenants thereof.

The plaintiff delivered to the defendant its written "Consent of such Assignment."

By virtue of the covenants in such lease from plaintiff to Menke and the assignment of Menke to defendant, it became obligated to pay the ground rents, provided for in the perpetual leases, and by agreement between the plaintiff and defendant, such ground rents were paid to the original owners of the fee, the "Pike Trustees."

Thereafter, the defendant acquired by purchase from such original lessors the "Pike Trustees" the fee to the real estate in question, subject, however, to the perpetual leases, which were by the original lessors, the "Pike Trustees", conveyed to Hinsch, Orr, and others, and by them assigned to plaintiff.

Plaintiff has performed all the covenants and conditions provided for in such original leases, and there has been paid

upon such original purchase price the sum of $10,000.00, reducing the purchase price now to $190,000.00.

Plaintiff has given defendant, as the present owner of the fee of such premises, notice of its desire to exercise the privilege of purchase, provided for in the original leases, but defendant refuses to convey the fee to plaintiff.

Prayer is made for specific performance of the contract to convey the fee.

It is the contention of the defendant that the plaintiff having executed a lease of the leasehold estate and conveyed to Menke its interest in the real estate, and having acquiesced in the assignment of such lease to the defendant and having agreed that ground rents should be paid to the owners of the fee, the "Pike Trustees" has encumbered its right to execute the privilege of purchase incorporated in the original perpetual lease, and placed the option in abeyance for 31 years by executing its lease to Menke.

The language used in the amended petition is not as definite and accurate as it might be. Were the common law rule of strict construction applied to the amended petition, the interpretation advocated by defendant might be properly held to exist, but applying the rule under the Code of liberal construction, there being no inconsistent allegations in the pleading, it appears that the language used is fairly capable of stating that the plaintiff still has reserved in itself the right to exercise the privilege of purchase, and has the right to acquire the fee under the covenants in the perpetual lease from the "Pike Trustees" to Hinsch, Orr, and others.

Reduced to its simplest terms, by this action the plaintiff seeks to acquire the bare legal title to the real estate involved. It is not unusual that the title and right to possession are found in different persons, nor is any authority shown for the conclusion that the right to specific performance will be refused merely because such is the case.

It is also evident that nothing the defendant has done or may do can deprive the plaintiff of its right to specific performance, if it has not parted with that right. No allegation in the amended petition shows that it has divested itself of this right to exercise the option, which it obtained through the transfer mentioned.

The next contention of the defendants is that the plaintiff has an adequate remedy at law.

The right to compel specific performance of a contract to sell real estate is probably one of the oldest and most firmly established rights recognized by courts of chancery. It is ■ "a conscious attempt on the part of the court to do complete justice to both the parties with respect to all the judicial relations growing out of the contract between them." Pomeroy Eq. Jur., Vol. 4, 5th Ed., p. 1033.

It is further stated: "The ground of the jurisdiction may be practically stated thus: that an award of damages will not put the party in a situation as beneficial to him as if the agreement were specifically performed." Id. p. 1034.

It must be remembered that the matter is presented upon a demurrer. That the pleading of the plaintiff is entitled to ■ all the fair and reasonable intendments of the language used. **Guardian Life Ins. Co. of America v Veser, 128 Oh St. 200. Parletto v Industrial Commission of Ohio, 140 Oh St 12.**

It may be that upon the introduction of evidence, the examination of the several instruments of title involved, and a full hearing on the merits of the controversy that the contentions of the defendant may be sustained. The problem now presented is, does the pleading of the plaintiff, examined under the light of the rules mentioned, state a cause of action calling for the intervention of a court of equity?

It certainly does not appear from the allegations of the amended petition that the plaintiff has an adequate remedy at law, but, on the contrary, facts are alleged which bring the plaintiff within the scope of that chancery power which has usually been exercised in cases calling for specific performance of contracts to sell real estate.

The defendant has by taking a deed to the fee placed itself directly in the position where it is obligated to comply with ■ the option to purchase held by the plaintiff. That it may later through the exercise of an option transferred to it by assignment demand a reconveyance to itself is beside the point. It may or may not exercise such option.

■ It is not within the province of this Court to inquire why the plaintiff wishes to acquire the legal title.

It is stated in Pomeroy Eq. Jur., 5th Ed., Vol. 4, p. 1040:

"The granting the equitable remedy is, in the language ordinarily used, a matter of discretion, not of an arbitrary, capricious discretion, but of a sound judicial discretion, controlled by established principles of equity, and exercised upon a con-

sideration of all the circumstances of each particular case. Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach. This is the ordinary language of judges and textwriters. The term 'discretionary' as thus used is, in my opinion, misleading and inaccurate. The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions, and incidents, which equity regards as essential to the administration of all its peculiar modes of relief. When all these elements, conditions, and incidents exist, the remedial right is perfect in equity. These elements, conditions, and incidents, as collected from the cases, are the following: The contract must be concluded, certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of the court. So far as these essential elements and conditions do not relate to the existence of contracts binding in equity, they are nothing but expressions and applications of the fundamental principles, he who seeks equity must do equity, and he who comes into equity must come with clean hands."

Again, in Pomeroy Eq. Jur., 5th Ed., Vol. 1, p. 381, it is stated:

"It is true that in applying this doctrine the courts of equity have established the further rule that in general the legal remedy of damages is inadequate in all agreements for the sale or letting of land, or of any estate therein; and therefore in such class of contracts the jurisdiction is always exercised, and a specific performance granted, unless prevented by other and independent equitable considerations which directly affect the remedial right of the complaining party (see Secs. 1400, et seq.); but this result does not interfere with nor modify the principle which is under discussion. Various and sometimes

very insufficient reasons have been given by judges for the foregoing rule, that the legal remedy is always to be regarded as inadequate in contracts relating to real estate, while on the other hand it is generally to be regarded as adequate in contracts relating to personal property. The distinction may, it would seem, be thus explained: In an agreement for the sale of land, the vendee, in addition to his legal primary right, also obtains, in pursurance of the equitable doctrine of conversion (see Sections 368, 1161), an equitable estate in the land,—an estate which equity regards as the real beneficial ownership, burdened simply or encumbered with the lien of the unpaid purchase price. Being thus the holder of the equitable estate in the subject-matter, the equitable owner of the land, he is entitled as a matter of course to the aid of a court of equity in protecting such estate and in clothing him with the legal title by means of a conveyance from the vendor. The exercise of the jurisdiction does not therefore depend, as it does when the jurisdiction is merely to confer equitable relief, upon the inadequacy of the legal remedy, but is rather a matter of equitable right in the vendee."

The defendant also contends that plaintiff "is asking that this Court compel defendant to do an act which in turn will compel the plaintiff to an anticipatory breach of its contract."

This contention is based upon the predicate that the plaintiff by acquiring the fee will cause a merger of the leasehold and fee "annihilating the perpetual leasehold" and that the plaintiff will therefore be unable to comply with the privilege of purchase now resting by assignment from Menke in the defendant.

The fallacy of this contention lies in the assumption that equity will permit a mere formal merger to interfere with the contractual rights of the parties, and will enforce a merger contrary to the intention of the owner of the property. Obviously, it cannot be the intent of the plaintiff to place itself in a position in which it cannot carry out its contract to Menke assigned to the defendant. See: Pomeroy Eq. Jur., 5th Ed., Vol. 3, p. 153, Section 791: "Intention Prevents a Merger." See also: 32 Am. Jur., p. 281, Section 301.

Even if the plaintiff should be so obtuse as to put itself in a position where it could not perform its contractual obli-

gations to the assignee of its lessee, equity would never permit the abstract rule of merger to furnish a cloak for the plaintiff's own wrong. Such a defense to the defendant's demand for transfer of the fee would fail, for equity will not permit one to profit by his own wrong.

"Equity imputes an intention to fulfill an obligation," "Equity looks to the intent rather than to the form," and "Equity regards that as done which ought to be done." These maxims lay at rest any apprehension involving an "anticipatory breach."

For the reasons then that the allegations of the amended petion do not show a present transfer of the right to exercise the privilege of purchase by the plaintiff, or that if the prayer of the amended petition is granted, any intention on the part of the plaintiff to cause a merger of the freehold and leasehold will produce an "anticipatory breach," even if this would be effective against the rights assigned the defendant and for the further reason that from such allegations there is sufficient shown to bring this case within the usual rule entitling the plaintiff to specific performance by reason of inadequacy of other relief, the demurrer to the amended petition must be overruled.

Such being the case, there having been no trial upon the facts in the Court of Common Pleas, the jurisdiction of this Court to further consider the case ceases. In **Le-Maistre, Admr. et v Clark, 142 Oh St 1,** the first and second paragraphs of the syllabus are:

"1. Under the provisions of §6, **Article IV of the Constitution of Ohio** the Courts of Appeals of this state have appellate jurisdiction in the trial of chancery cases.

"2. Such appellate jurisdiction does not authorize such courts to conduct a trial on issues of fact unless such a trial has been had in the court of first instance."

Considering the case then as one appealed on questions of law, the judgment of the Court of Common Pleas is reversed and the case is remanded to the Court of Common Pleas for further proceedings.

HILDEBRANDT and MATTHEWS, JJ., concur.