The KANSAS AND MISSOURI RAIL-
WAY AND TERMINAL COMPANY,
a corporation, Plaintiff,

v.

BEAL, INCORPORATED, a Kansas cor-
poration, and Beco, Inc., a Kansas
corporation, Defendants.

Civ. A. No. KC–2866.

United States District Court,
D. Kansas.

Jan. 26, 1972.

Robert Foerschler, McAnany, Van
Cleave & Phillips, Kansas City, Kan., for
plaintiff.

William E. Scott, Scott, Daily & Vasos,
Kansas City, Kan., for defendant.

## OPINION OF THE COURT WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

THEIS, District Judge.

### FINDINGS

1. This is an action for collection of charges for car service, the supply of terminal facilities and transportation, and charges on interstate shipments of freight, arising under the laws of the United States regulating commerce and industry, and particularly the Act of Congress known as the Interstate Commerce Act (Elkins Act), Title 49 U.S.C., Section 1, et seq. This Court has jurisdiction of the parties and the subject matter herein pursuant thereto and pursuant to Title 28 U.S.C. § 1337.

2. Plaintiff is a railroad corporation duly organized and existing under and by virtue of the laws of the State of Kansas. The defendants are each Kansas corporations and each maintains its respective office and place of business at 4001 Kaw Drive, Kansas City, Kansas. The defendants have generally common ownership. The defendant Beco, Inc. leases and rents premises to Beal, Inc., upon which Beal, Inc. operates its packaging and allied

businesses consisting mainly of the canning, processing and distributing of a product called STP, an oil additive which is purported to increase the operating efficiency of petroleum-fuelled engines.

3. This case principally involves the validity of certain demurrage and switching charges claimed to have been made by plaintiff carrier for and on behalf of the defendants, and claimed offsets against such charges by defendants against the plaintiff.

4. Demurrage is chargeable by a carrier to a consignee according to ICC regulations setting rates and bases for charges of such rates.

5. As shown by the evidence, demurrage may be defined as a storage charge assessed on cars that might be held on the carrier's tracks unable to be placed at a consignee's place of business, and also on cars placed at a consignee's place of business and held beyond the provided free-loading or unloading time. Under regulations, a consignee is allowed forty-eight hours free time beginning the first 7:00 a. m. after a car is placed, excluding Saturdays, Sundays and the ordinary legal holidays as specified in the regulations.

6. Virtually all of the railroad cars involved here upon which demurrage charges are claimed were leased tank cars which may be defined as a leased car to the consignee which is free of demurrage so long as it is on the consignee's property or on tracks leased by him. Demurrage charges begin on a leased tank car when it remains on the carrier's rails beyond the free time, and the consignee is unable to accept it on his track.

7. In this case, plaintiff, The Kansas and Missouri Railway and Terminal Company, is the carrier, and defendants Beal and Beco are the consignees.

8. By an agreement dated November 28, 1961, the parties herein, i. e., Beco, Inc. as lessee, entered into a lease agreement covering 0:33 acres of land, together with 1,328 feet of track then owned by plaintiff (plaintiff's Exhibit

4), providing for payment by defendants for an annual rental of $708.94.

9. By warranty deed the plaintiff conveyed to defendant Beco, Inc. the same land as described in the November 28, 1961 lease agreement, by instrument dated January 14, 1963 (plaintiff's Exhibit 5).

10. On the same date, January 14, 1963, an easement or right-of-way was granted by defendant Beco, Inc. to plaintiff for the "continued operation, maintenance and use of the railway business of the grantee, etc." (plaintiff's Exhibit 6).

11. By agreement dated June 22, 1965, the plaintiff and defendant Beco entered into a lease agreement covering 1200 feet of track owned by plaintiff, located in Mattoon Yard, adjacent to defendants' plant, with an annual rental, payable in advance by Beco, of $780.00 (plaintiff's Exhibit 8).

12. Both lease agreements, i. e., plaintiff's Exhibits 4 and 8, in Clause 5 thereof, provided for termination of such lease by either party upon thirty days written notice to the other party.

13. Additionally, an average agreement on demurrage charges (plaintiff's Exhibit 9), was entered into by the parties herein on January 31, 1961, which generally establishes a system of credits and debits on various categories of rail equipment in the computation of demurrage charges. In the context and result of the Court's decision in this case, this average agreement has no bearing upon the outcome of this case.

14. Plaintiff, in its complaint herein, filed on September 25, 1968, seeks judgment against the defendant Beal for a total sum of $35,815.00 for alleged unpaid demurrage charges incurred between January, 1966, and February, 1968, and $1,384.50 for alleged unpaid switching service charges; and judgment against defendant Beco for unpaid annual rental of $708.94 for the year 1965 on the 0.33 acre tract under the agreement alluded

to in Finding No. 8 above, and for unpaid rental of $749.77, under terms of the lease agreement alluded to in Finding No. 11 above.

15. Defendants, in their answer and counterclaim, under the pre-trial order, and in the course of the trial in this case, deny owing any of the claims made by plaintiff, and allege cross-claims and set-offs against plaintiff in the amount of $8,089.72 for payments alleged to have been wrongfully made to plaintiff, and for various breaches of contractual and tortious conduct by plaintiff to defendants.

16. The Court finds, and counsel has so stipulated, that the account alleged and proved by plaintiff against defendants for switching charges in the amount of $1,384.50, was incurred between the dates of June 22, 1965, and August 27, 1965, and hence is not a viable issue in this case because of the applicability of the statute of limitations.

17. The defendants have paid the annual rentals under the lease agreement covering the 0.33 acres of land alluded to in Finding No. 8 above at all times since its inception, except for the amount of $708.94, the annual rental due for the year 1965, which remains unpaid.

18. The defendants have paid all demurrage and other service charges rendered and made by plaintiff at all times before and after the filing of this suit, except for the demurrage charges claimed in the complaint.

19. No rentals were ever paid by defendants to plaintiff on the lease of the Mattoon Yard property, alluded to in Finding No. 11 above, and in fact, plaintiff purported to cancel said lease effective June 16, 1966, by written notice to the defendants delivered by mail under date of May 13, 1966 (plaintiff's Exhibit 10).

20. Plaintiff's Exhibit 12, being the itemized account of the claimed demurrage charges against defendants, correctly reflects the time and tariff charges entered therein; and plaintiff's

Exhibit 15 is a correct summarization of said charges.

21. Defendants contend that the charges are inaccurate, not owed, and if owed, more than offset by wrongful payments made by defendants, or contractual and/or tortious damages to defendants, for the following reasons:

(a) From and after January 14, 1963, defendant Beco was the owner of the leased 0.33 acres, that the lease thereof between the parties dated November 28, 1961, merged in the fee ownership, and hence all annual rental payments made or due thereafter from defendants to plaintiff were either paid under mistake or not owing.

(b) The Mattoon Yard lease of June 22, 1965, was invalidly cancelled by plaintiff because of offsets owing at the time from plaintiff to defendants, and a portion of plaintiff's claimed demurrage charges are not owing or collectible since they were based on invalid cancellation of the lease by plaintiff.

(c) Constructive placement notices required by the ICC regulations to be sent by the carrier to consignee to notify it of the arrival and placement of the car on carrier's tracks for consignee's use were never sent out by plaintiff to defendants on a portion of the demurrage charges made and claimed in this action nor was any other actual notice given.

(d) Certain amounts were due from plaintiff to defendants for breach of contractual duty or tortious acts by plaintiff against defendants.

22. Defendants' Exhibit P and Q are two pads of constructive placement notices in the records of plaintiff covering the dates and business done with defendants during the time period applicable to this case.

23. The constructive placement notice form is prescribed by the ICC for use in conformity with the statutory law and regulations affecting carriers and shippers or consignees. One of the forms is reproduced by photocopy as a part of these findings:

THE Kansas and Missouri Railway & Terminal Company 400
THE KANSAS CITY SOUTHERN RAILWAY COMPANY
LOUISIANA & ARKANSAS RAILWAY COMPANY

KANSAS CITY, KANS. Station Jan. 2 1968.

### CONSTRUCTIVE PLACEMENT NOTICE

M _Beal Inc_

You are hereby notified that the following cars, consigned to, or ordered to or by you, cannot be delivered on account of your inability to receive, or because of other conditions attributable to you, an tender of same is hereby made. These cars are subject to the demurrage rules published in the tariffs lawfully on file, and charges in accordance therewith will be made for detention beyond the free time therein provided.

| CAR | | CONTENTS | REMARKS |
|---|---|---|---|
| INITIAL | NUMBER | | |
| TP | 155623 | XDF | from MP |
| MP | 352118 | | |
| | 355679 | | |
| GATX | 95523 | Oil | |
| NATX | 19540 | | |
| | | | |
| | | | |

R. V. CLARK
Agent

( ORIGINAL COPY OF THIS NOTICE RECEIVED

At M 19 By { Consignor or
{ Consignee

Per

(If consignor or consignee refuses to acknowledge receipt of this Notice as provided above, the person delivering same should fill out, date and sign the following certificate on the copy kept on file by the Agent.)

I hereby certify that the copy of this Notice was delivered by me to Mr. _____

representing the consignor or consignee named herein at _____ M. on _____ , 19 ___

(Signature of person delivering Notice.)

(If this Notice is not delivered personally by the Agent or his representative, it must be served by mail and the following certificate on the copy kept on file by the Agent should be filled out, dated and signed.)

I hereby certify that the copy of this Notice was mailed to the shipper or consignee named herein, at _____ M. on _____ , 19 ___

[A5551]

24. During the period the certificate of delivery or mailing on the bottom part of the constructive placement notice form was correctly executed by an agent for plaintiff, from August, 1966, through December, 1966, reflected demurrage charges by the plaintiff against defendants in the apparent amount of $13,-706.00.

25. With the exception of certificates dated January 12, and 16, 1967, reflecting demurrage charges, none of the certificates between the dates of January 10, 1967 and August 16, 1968, were correctly executed as to time, date, and were without signature of any agent of plaintiff.

26. Defendants, in their defense and counterclaim, alleged certain various claims and amounts owing by plaintiff to defendants, some of which were paid and some of which were not. There was some testimony that these unpaid amounts totaled some $1,028.90 at about the time plaintiff cancelled the Mattoon Yard lease, and defendants contend these unpaid claims as a basis for defendants not paying the rental due on the cancelled Mattoon Yard lease. However, the Court finds no substantial evidence exists to justify such a theory, since defendants made no insistence on payment at the various times and plaintiff paid many bills rendered by defendants to it during the period. In any event, the present accumulation of unpaid bills appears to this Court as an afterthought by defendants to use as a defense to this suit. Assuming, however, that plaintiff did owe these amounts, all were incurred more than three years before the filing of this suit and are barred by the statute of limitations with two exceptions:

(a) A claim by defendants against plaintiff shown by an invoice dated March 13, 1967 (defendants' Exhibit E), in the amount of $71.46, for a coupling hose destroyed by plaintiff's personnel. The Court finds under the evidence this is a lawful and viable claim and charge by defendants against plaintiff, and one which defendants should recover here.

(b) The other claim is one appearing in the testimony of defendants' witness Gerald Motsinger, office manager of defendants, appearing at page 186 of the transcript, in which he casually testified that defendants lost $2,880.00 as a result of defendants' plants being shut down for a day because they failed to receive switching services ordered from plaintiff. The Court finds the proof offered to have been insufficient to establish this amount as a valid claim by defendants which can be offset against the amounts found to be due and owing plaintiff by defendants.

## CONCLUSIONS OF LAW

1. The following ICC regulations, viz., provisions of Freight Tariff 4–G establishing Car Demurrage Rules and Charges and Storage Rules and Charges (effective September 24, 1964, and in effect during all times pertinent herein) govern and apply to the facts in this case:

*"Rule 5, Placing Cars for Unloading Section A.–1.* When delivery of a car consigned or ordered to an industrial interchange track or to other-than-a-public-delivery track cannot be made on account of the inability of consignee to receive it, or because of any other condition attributable to the consignee, such car will be held at destination, or, if it cannot reasonably be accommodated there, at an available hold point, notice shall be sent or given to consignee in writing or, in lieu thereof, as otherwise agreed to in writing, that the car is held and that this railroad is unable to make delivery. *This will be considered constructive placement.* (See Rule 3, Sections D and E, page 59.)" (Emphasis supplied.)

*"Rule 3. Computing Time. Section D.* Except as otherwise provided in Section B, Paragraph 1, of this Rule, on cars to be delivered on other-than-public-delivery tracks, time will be computed from the first 7:00 A.M. after actual or *constructive placement* on such tracks. . . . "

*"Rule 4. Notification. Section A.* Except as otherwise provided in Sec-

tion D, of Rule 2, page 57, or in Sections B, C or D of this Rule (not applicable to these facts), notice of arrival shall be sent or given consignee or party entitled to receive same by this railroad's agent, in writing, or in lieu thereof, as otherwise agreed to in writing by this railroad and consignee within twenty-four hours (exclusive of Saturdays, Sundays and holidays (See Item 25) after arrival of car and billing at designation, such notice to contain car initials and number, point of shipment, contents and, if transferred in transit, the initials and number of original cars. When address of consignee does not appear on billing and is not known, the notice of arrival must be deposited in United States mail, bearing return address, same to be preserved on file, if returned. An impression copy shall be retained and when notice is sent or given on a postal card the impression shall be of both sides. (See Rule 3, Section B and C, pages 58 and 59.) In case a car subject to Rule 3, Section C, Paragraph 1, page 59, is not placed on public delivery track within twenty-four hours from the first 7:00 A.M. after notice of arrival has been sent or given, notice of placement shall be sent or given to consignee."

"*Rule 7. Claims.* (Issued May 16, 1966, effective May 20, 1966) *Section C. Delayed or Improper Notice. Paragraph 5.* When an order giving disposition of a shipment is sent to this railroad by United States mail and the order is not received by the addressee, such order shall be considered received as of the date it should have been delivered, *provided proof is furnished by the claimant that the order was deposited in the mail properly stamped and addressed on the date mailed.* In such event, storage charge shall not be assessed against the shipment during the time this railroad was unable to make delivery by reason of nonreceipt of the order."

2. The lease agreement of November 28, 1961 (Finding No. 8), the warranty deed of January 14, 1963 (Finding No. 9), and the easement grant of January 14, 1963 (Finding No. 10), must be construed together in light of the actions of the parties, and when so viewed, an intention of the parties is apparent to continue the provisions of the lease agreement of November 28, 1961, and preserve the legal status quo of that time consistent with defendants' ownership of the fee. The acts of defendants in paying the annual rental with the exception of the rental for the year 1965, show defendants' acquiescence or ratification of this legal concept. Defendant Beco is obligated and legally liable for the unpaid rental in the amount of $708.94 for the year 1965, due on November 28, 1964, plus lawful interest from said due date.

3. The termination by plaintiff of the lease agreement dated June 22, 1965, covering the Mattoon Yard (Finding No. 11), was in accordance with the provisions of that agreement and was legally effective as of June 16, 1966, thereby restoring legal possession of the property covered and validating demurrage charges applicable thereafter for defendants' use of the trackage. It follows, therefore, that defendant Beco is obligated and legally liable to plaintiff for the unpaid rental for the nearly one year period from June 22, 1965 to June 16, 1966, in the amount of $749.77, plus lawful interest from said due date of June 22, 1965.

4. Legal notification from carrier to consignee of the arrival and placement of a car being a necessary and lawful requirement and duty of the carrier, it follows that no legal demurrage charges can be made without proof of actual knowledge of such arrival and placement of the particular car by its consignee, or by proof of mailing of notice to the consignee. Here, the evidence of actual notification and/or knowledge to defendant consignee or their agents is at best conflicting. Plaintiff failed to meet its burden of proof in this regard. Likewise, as indicated in Findings 24 and 25, there was no valid proof of either physical or mail delivery of the constructive

placement notice over a considerable period of time. Again, plaintiff failed to meet its burden of proof, and all demurrage charges in its records based on a certificate deficient or lacking in full execution must fall and are void against these defendants.

5. Defendants' counterclaim, as shown in defendants' Exhibit E in the amount of $71.46, is a valid claim, and is the only affirmative claim made by defendants herein for which they may have judgment and which may be offset against the claims allowed to plaintiff against defendants herein.

\* \* \* \* \* \*

The parties are directed by the Court to make an agreed and stipulated calculation of allowable demurrage charges in accordance with the tenor of the Court's Findings and Conclusions hereinbefore made, and to incorporate them in a journal entry of judgment for plaintiff reflecting the rental amounts due (Conclusions Nos. 2 and 3), and the demurrage amounts due, and the offset of $71.46 due defendants from plaintiff.

The costs of this action are taxed to both parties in equal amount, which judgment shall also be reflected in the journal entry of judgment to be prepared and submitted by counsel.

## OPINION OF THE COURT

The trial, the submissions by counsel, and finally this opinion, with its findings and conclusions, have all been characterized by a stop-and-go sequence at horse-and-buggy speed. The evidence before the Court and the statements and arguments of counsel have left information gaps sorely to be desired for the accuracy and legal soundness of decision.

Several interesting and binding legal concepts have dictated the disposition of this litigation. The legal effect of the three property transactions, viz., the lease agreement, the warranty deed, and the easement on the 0.33 acre tract, involved either the adoption of defendants' merger theory or plaintiff's intention-of-the-parties theory. The Court believes the facts and circumstances here strongly dictated the choice of decision on the sound basis of apparent conduct of the parties. The Court finds this legal basis to be buttressed by the late Kansas case of Aguilera v. Corkill, 201 Kan. 33, 439 P.2d 93, and the following cases from other jurisdictions: Mobley v. Harkins, 14 Wash.2d 276, 128 P.2d 289, 143 A.L.R. 88 (1942); White v. Coates, 17 Wash.2d 686, 137 P.2d 113 (1943); Chicago Title and Trust Co. v. Kesner, 296 Ill.App. 187, 16 N.E.2d 175 (1938); Hotel Burnet & Co. v. Union Central Life Insurance Co., 72 Ohio App. 453, 52 N.E.2d 754 (1943); Zouboukos v. Costas, 232 Miss. 860, 100 So.2d 781 (1958).

■ The intention of the parties as to the effect of these various agreements also is clearly shown by their actions. Lease payments under the November 28, 1961 agreement have been continued since the grant under the 1963 warranty deed. Various repairs to the trackage involved have been billed to and paid by defendant Beal, according to the provisions of the lease. The plaintiff, in reliance on the continued existence of the lease, has computed demurrage as though the 1,328 feet of track was properly considered "private."

■ Certainly, the plain wording of the termination clause of the lease agreement of June 22, 1965, on the Mattoon Yard trackage, and the plaintiff's acts in conformity thereto, made an effective ending of that legal relationship without reference or dependence upon any debtor-creditor status between the parties at the time of termination.

■ The most compelling issue was the one of the validity of the demurrage charges in the light of the ICC regulations covering the constructive placement notices and the evidence concerning plaintiff's compliance with these regulations or defendants' actual notice of the car placements where defective notices existed. Here, the conduct of the plaintiff in failing to keep adequate office records is the legal basis for deny-

ing recovery for apparent demurrage services rendered. Plaintiff's contention that the evidence is produced in the testimony of its general manager, Clark, during the time of the questionable notices, to the effect that all notices were mailed since it was the custom of the company to mail such notices, cannot suffice as proof—much less burden of proof. Plaintiff had available discovery of defendants' records to prove mailing and receipt of notices by defendants, but there was no showing of existence of the notices in the business records of defendants. Plaintiff definitely failed to meet its burden of proof either on a weight or credibility of evidence basis or on a sound legal basis.

The law is well-settled that one who bases legal action upon a required notice has the burden of making such notice adequate and effective; otherwise, it is not notice. Most especially, this should be a heavy burden upon quasi-public companies such as carriers, public utilities, or insurance companies which are regulated by law, whose personnel or officers should know that law, and who have the capacity to maintain extensive and minute records. Ineptness should not justify legal award. This plaintiff, as a carrier, was bound to prove notice, and is entitled to collect and profit only on those demurrage transactions in which it has done so.

As stated in the Findings and Conclusions, none of defendants' counterclaims had either evidentiary or legal basis except the item of $71.46.

Accordingly, judgment is ordered in plaintiff's favor for the demurrage charges based on legal notice of constructive placement, plus the two unpaid lease rentals, less the defendants' proved offset of the $71.46 item.

An additional journal entry will be necessary here, in view of the Court's placing on counsel for the parties the burden of computation of the demurrage charges allowed on the basis of the books and records of plaintiff entered in evidence before this Court.