[Cite as *Faya, L.L.C. v. Abdurahman Halil Khalil, L.L.C.*, 2025-Ohio-2149.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

FAYA LLC,                                          :

      Plaintiff-Appellee,          :

      v.                                        :

                    No. 114337

ABDURAHMAN HALIL KHALIL,          :
ET AL.,

                          :

      Defendants-Appellants.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 18, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-964886

---

*Appearances:*

Thomas M. Horwitz Co., LPA, and Thomas M. Horwitz,
*for appellee.*

Shapero & Green LLC, Brian J. Green, and Charles P.
Royer,*for appellants.*

MARY J. BOYLE, P.J.:

{¶ 1}   The instant appeal arises from a contract dispute between plaintiff-appellee Faya LLC ("Faya") and defendants-appellants Khalil Halil ("Khalil"), Nuha Halil ("Nuha"), and Abdurahman Halil Khalil, LLC (the "Company") (collectively

"defendants"). Faya and Khalil and the Company entered into a lease (the "Lease") and asset-purchase agreement (the "APA") whereby Faya agreed to purchase from Khalil and the Company a gas station and convenience store, with Faya having the option to purchase the property from Khalil and the Company. Faya exercised its option to buy, and Khalil refused to sell the subject property. Faya initiated a lawsuit against defendants and following a bench trial, the court ordered the defendants to transfer the subject property to Faya for $1.1 million less any rent Faya paid from August 1, 2021, to September 3, 2024, and found that Faya was no longer required to pay rent to defendants. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} In June 2022, Faya filed its initial complaint against Khalil regarding the contract between Faya and Khalil and the Company and Faya's offer to purchase the gas station, convenience store, and real property located at 1065 Lost Nation Road in Willoughby, Ohio. In March 2023, Faya filed its second amended complaint in which Faya added the Company and Nuha as defendants. Nuha was added due to her dower interest in the property as Khalil's wife. Faya sought specific performance on the APA signed and executed by Khalil and the Company and on the Lease signed and executed by Khalil. Both the APA and the Lease included an option for Faya to purchase the leased property for $1.1 million. Faya alleges that when it exercised the option to purchase, Khalil refused to sell the property. The second amended complaint also included causes of action for "disregard the

corporate entity," unjust enrichment, promissory estoppel, and fraud and sought punitive damages and attorney fees.

{¶ 3} The matter proceeded to a bench trial in May 2024. The trial court thoughtfully summarized the testimony presented at trial in its journal entry as follows:

> 1. On July 30, 2020, [Faya] and Defendants [Khalil] and [the Company] entered a purchase and sale agreement . . . in which Khalil and the Company agreed to sell the Company's assets to [Faya].
>
> 2. In the [APA], Khalil agreed to enter a lease with [Faya] for the real property located at 1065 Lost Nation Road in Willoughby, Ohio, 44094 (the property). . . . [T]he certified copy of the deed . . . conveyed the property's title to Khalil. . . .
>
> 3. In the [APA], Khalil agreed that the lease for the property will include an option for [Faya] to purchase the property for $1,100,000.00.
>
> 4. In the [APA], Khalil represented that he was authorized to execute and deliver all documents attendant to the [APA].
>
> 5. On July 30, 2020, [Faya] and Khalil entered a lease for the property. . . .
>
> 6. In the [Lease], Khalil agreed that [Faya] has the option to purchase the property for $1,100,000.00.
>
> 7. [Faya] would not have entered the [APA] or the [Lease ]if [Faya] did not have an option to purchase the property.
>
> 8. On or about July 18, 2021, [Faya] exercised the option to purchase the property by providing Khalil a proposed real estate purchase agreement ([the "Proposed Agreement"]).
>
> 9. Khalil refused to sign the [Proposed Agreement] because he did not want to sell the property.
>
> 10. After Khalil refused to sign the [Proposed Agreement], [Faya] continued to pay rent to Khalil as provided in the [Lease].

11.   [Faya] has substantially complied with all its contractual obligations under the [APA], the [Lease], and the [Lease's] option to purchase the property.

12.   Khalil and [Nuha] married in 1985.

13.   The [APA] is a binding contract between [Faya], the Company, and Khalil.

14.   The [Lease] is a binding contract between [Faya] and Khalil.

15.   Khalil was contractually obligated to sell the property to [Faya] for $1,100,000.00 upon [Faya's] exercise of the option to purchase.

16.   Khalil breached the [Lease] when he refused to sell the property to [Faya] upon [Faya's] exercise of the option to purchase the property.

17.   As a result of Khalil's breach of the [Lease], [Faya] paid Khalil rent in the total amount of $312,000.00 from August 2021 to May 2024.

18.   The monthly rent for the property under the [Lease] is $10,000.00 until July 31, 2025.

. . .

20.   [Nuha] has a dower interest in the property.

(Journal entry, Sept. 3, 2024.)

{¶ 4}   Additional evidence presented at trial revealed that Khalil purchased the property at 1065 Lost Nation Road for $134,445.12 at a foreclosure auction in January 2017.  The title to the subject property was in Khalil's name only.  Nuha and Khalil were married when he acquired the subject property.  Furthermore, when Faya and Khalil and the Company entered into their agreement, the Company had operated the gas station and convenience store for only two years, which prevented Faya from securing financing for the purchase of the business assets and the property together.  On June 29 and 30, 2020, Faya and Khalil signed a letter of

intent ("LOI") detailing the purchase price for the business and the property and the monthly rent. The LOI states that Faya had the option to purchase the property after 2-3 years for $1.1 million and the purchase price for the business assets was $500,000, plus inventory.

{¶ 5} On July 30, 2020, Faya and Khalil and the Company signed and executed the APA for the Company's business assets. In the APA, Khalil stated that he had authority to execute and deliver all documents related to the APA. Section 8.04(e) of the APA states in pertinent part:

> Option to Purchase real Property. Parties agree that Buyer shall have an option to purchase the real property at any time within the first six (6) years by notifying the Seller in writing, for a purchase price of One Million One [Hundred] Thousand ($1,100,000.00). Parties shall pay their respective usual and customary closing costs and expenses and tax and other proration.

(APA.)

{¶ 6} Also on July 30, 2020, Faya and Khalil and the Company signed and executed the Lease for the property. The Lease term was for five years, from August 1, 2020, to July 31, 2025. Faya's monthly rent for the property in the first year was $8,000, $8,500 for the second year, and $10,000 for the remaining three years. According to Faya, it paid it's rent on time to Khalil and was still paying rent at the time of trial. The Lease included language similar to the APA, providing that Faya has the option to purchase the property for $1.1 million. Section 3(e) of the Lease states:

> Parties agree that Buyer shall have an option to purchase the real property at any time within the first six (6) years by notifying the Seller

in writing, for a purchase price of One Million One Hundred Thousand ($1,100,000.00). Parties shall pay their respective usual and customary closing costs and expenses and tax and other proration.

(Lease.)

{¶ 7} In July 2021, Faya exercised the option to purchase the property by providing Khalil a written proposed real estate purchase agreement (the Proposed Agreement) for $1.1 million. Shortly after receiving the Proposed Agreement, Khalil advised Faya that he was not going to sell the property. With regard to his reason as to why he did not want to sell the property to Faya, Khalil testified that he did not agree with the terms to sell the property and "[he did not] want to sell the property." (Tr. 74.)

{¶ 8} After the conclusion of the trial, the court entered judgment in Faya's favor and made the following findings:

19. None of [Faya's] claims extinguish the dower interest of [Nuha].

. . .

21. As a result of Khalil's breach of the [Lease], [Faya] has sustained damages in the amount of all rent paid to Khalil from August 1, 2021 to the present.

Therefore, judgment is entered for [Faya] and against [Khalil] as follows:

A. Upon [Faya's] payment to Khalil of $1,100,000.00 less all rent [Faya] paid to Khalil from August 2021 to the date of filing of this journal entry, Khalil shall convey the subject property's title to [Faya] by quit-claim deed subject to [Nuha's] dower interest;

B. Upon the filing of this journal entry, [Faya] is no longer obligated to pay rent to Khalil under the [Lease];

C. Khalil shall remain responsible for all liens placed against the property on or after August 1, 2021;

D. The costs of this action shall be [paid] by Khalil.

(Journal entry, Sept. 3, 2024.)

{¶ 9} Defendants now appeal, raising the following five assignments of error for review, which shall be addressed together, when appropriate, for ease of discussion.

**Assignment of Error I:** The trial court improperly ordered specific performance when the parties did not agree on material terms such as the earnest money deposit, inspection rights, tax prorations, the financing contingency, allocation of closing costs, and type of deed.

**Assignment of Error II:** The trial court improperly ordered specific performance despite the fact that [Nuha] never signed the Purchase Agreement and never waived her dower interest.

**Assignment of Error III:** The trial court improperly ordered specific performance when [Faya] failed to meet its burden that it was a ready, willing, and able purchaser.

**Assignment of Error IV:** The trial court improperly calculated damages relating to rent paid as no closing date was scheduled on August 1, 2021, and [Faya] admitted that it was not financially capable of completing the transaction on August 1, 2021.

**Assignment of Error V:** The trial court improperly ordered that [Faya] did not have to pay rent anymore because specific performance was not an appropriate remedy.

## II. Law and Analysis

{¶ 10} As an initial matter, we must address the final appealable order issue raised by this Court. In January 2025, we sua sponte ordered the parties to file supplemental briefing, addressing whether a final appealable order exists in this case because the trial court's decision does not explicitly resolve each cause of action

in the second amended complaint. In defendants' supplemental briefing, they argue that the trial court's order was final and appealable because it essentially resolved all of Faya's claims. Defendants further argue that "disregard the corporate entity" and fraud were the only claims that were not resolved, but because Faya did not offer any evidence in support of these claims, these claims should be considered dismissed. In Faya's supplemental briefing, it took no position on whether the order was final and appealable and deferred to this court's determination. At appellate oral argument, counsel for defendants and Faya acknowledged that there is a final appealable order and Faya abandoned the claims that were not resolved, including fraud, and counsel for Faya acknowledged that it was a tactical decision to abandon its fraud claim. Having determined that final appealable order exists, we now address defendants' assigned errors.

{¶ 11} Defendants first contend that the trial court improperly enforced the Proposed Agreement. Second, the defendants contend the court could not force Nuha to release her dower interest because she did not sign the APA or the Lease. Third, the defendants contend the court improperly ordered specific performance because Faya failed to prove that it was a ready, willing, and able purchaser. Fourth, the defendants contend the court improperly awarded damages related to the rent paid as no closing date was ever scheduled. Last, the defendants contend the court improperly ordered that Faya did not have to pay rent because specific performance was not the appropriate remedy.

## A. Specific Performance

{¶ 12} In the first assignment of error, defendants argue that the trial court abused its discretion in ordering specific performance on the Proposed Agreement because there was no meeting of the minds as to the material terms. The trial court, however, never ordered specific performance on the unsigned Proposed Agreement Faya presented to defendants when exercising its option to purchase the property. Rather, the court ordered specific performance on the signed and executed APA and the Lease. Therefore, our discussion will address defendants' arguments with respect to the APA and the Lease executed in July 2020. In the third assignment of error, defendants argue that the court improperly ordered specific performance because Faya failed to demonstrate that it was ready and able to complete the purchase.

{¶ 13} This court has stated that "[s]pecific performance as a remedy for breach of contract is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." *Poppy v. Whitmore*, 2004-Ohio-4759, ¶ 8 (8th Dist.), citing *Roth v. Habansky*, 2003-Ohio-5378 (8th Dist.). Therefore, "[t]he standard of review in such a case is whether the trial court, sitting as a court of equity, abused its discretion." *Id.*, citing *Roth*, citing *Manning v. Hamamey*, 1998 Ohio App. LEXIS 493 (8th Dist. Feb. 12, 1998). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

"The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions, and incidents, which equity regards as essential to the administration of all its peculiar modes of relief. When all these elements, conditions, and incidents exist, the remedial right is perfect in equity. These elements, conditions, and incidents, as collected from the cases, are the following: The contract must be concluded, certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of the court."

*Manning* at \*7-8, quoting *Hotel Burnet Co. v. Union Cent. Life Ins. Co.*, 72 Ohio App. 453, 458 (1st Dist. 1943); *see also Poppy* at ¶ 9; *Roth* at ¶ 16.

{¶ 14} "'A contract is generally defined as a promise, or a set of promises, actionable upon breach.'" *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). To be enforceable, a contract must have "'an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Id.*, quoting *Perlmuter* at 414. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St. 3d 366, 369 (1991). "Once there is such a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind." *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, ¶ 18 (8th Dist.), citing *Mack v. Polson Rubber Co.*, 14 Ohio St. 3d 34, 37 (1984).

{¶ 15} Here, the parties agreed in the APA and the Lease for Faya to have an option to purchase the gas station, convenience store, and real property for $1.1 million. The execution of the Lease and APA by both Faya and Khalil demonstrates that there was a meeting of the minds between them. Contrary to defendants' assertion, there is nothing in the record indicating otherwise. A review of the record reveals that Faya complied with its contractual obligations in the APA and the Lease, had the money to make the purchase, and ultimately exercised its option to purchase. Khalil, however, testified that he did not comply with his contractual obligations because he did not want to sell the property. The trial court found, and we agree, that Khalil breached the Lease when he refused to sell the property to Faya upon Faya's exercise of the option to purchase the property. Therefore, we find that the court did not abuse its discretion in rejecting Khalil's reason for not complying with his contractual obligations and ordering the specific performance. The trial court did not exercise its judgment in an unwarranted way.

{¶ 16} In the second assignment of error, defendants contend that the trial court improperly ordered specific performance from Nuha. The court, however, made no such order. Rather, the court ordered Khalil to convey his interest in the property to Faya upon the payment of the purchase price and subject to Nuha's dower interest.

{¶ 17} Accordingly, the first, second, and third assignments of error are overruled.

**B. Damages**

{¶ 18} In the fourth and fifth assignments of error, defendants contend that the trial court improperly found that Faya was no longer required to pay rent and the court improperly awarded damages because no closing date was scheduled.

{¶ 19} The Ohio Supreme Court has stated that the

general rule as to damages payable in specific performance actions is found in Annotation (1949), 7 A.L.R. 2d 1204. This rule, which is recognized by virtually every jurisdiction, is best stated as follows:

"When specific performance is granted of a contract to convey real property, the court will enforce the equities of the parties in such manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract. It will compensate the purchaser for any loss of the use of the property during the delay by awarding him the rental value of it, or the net rents and profits of it, for the period. It will compensate the vendor for any loss of the use of the purchase money during the delay by awarding him the appropriate interest for the proper period. To either party it will give credit for such expenditures in relation to the property, or otherwise occasioned by the delay, as should be borne by the other. * * *" *Id.* at 1211-1212.

*See, also*, Annotation (1982), 11 A.L.R. 4th 891, and cases cited therein; 71 American Jurisprudence 2d (1973) 147-149, Specific Performance, Sections 115 and 116.

This statement of law is an attempt to place the parties in the relative position that they would have been in had the sale of the real estate proceeded according to the agreement. The seller should be reimbursed for his added expenses, as well as the loss of his use of capital funds. Conversely, the purchaser should have the benefits of the property that he would have received had he been in possession. *Hellkamp v. Boiman* (1970), 25 Ohio App. 2d 117, 122 [54 O.O.2d 237]; *Meineke v. Schwepe* (1952), 93 Ohio App. 111, 115 [50 O.O. 244]; 49 Ohio Jurisprudence 2d, supra, at 616, Section 90.

The object of a court in an equitable accounting ancillary to a decree for specific performance is to put the parties in the position which they would have been in had the contract been performed on the agreed

date. *Hellkamp v. Boiman*, *supra*; 49 Ohio Jurisprudence 2d, *supra*, at Section 90.

*Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275-276 (1984).

{¶ 20} In the instant case, the court found that as a result of Khalil's breach of the APA and the Lease, Faya sustained damages in the amount of rent Faya paid to Khalil after Faya exercised its option to purchase the subject property. The court's order provided that Faya's purchase amount of $1.1 million be reduced by the total amount of rent Faya paid Khalil from August 1, 2021, to September 3, 2024 (the date of filing of the court's journal entry). The order also relieved Faya from its continuing obligation to pay rent under the Lease. By doing so, the court attempted to place the parties in the relative position that they would have been in had the option to purchase the subject property proceeded according to the APA and the Lease, and the trial court was within its discretion to order that the rent be credited against the purchase price of the property. *Sandusky Properties* at 274. The court's order limited the rent credit to only the rent that Faya paid after it exercised the option to purchase, and to prevent Faya from incurring additional damages, the court relieved Faya of future rent obligations — obligations that would only serve as additional rent credits against the purchase price.

{¶ 21} Thus, upon a consideration of the foregoing, we find that the trial court did not abuse its discretion in its damages determination.

{¶ 22} The fourth and fifth assignments of error are overruled.

{¶ 23} Judgment is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
DEENA R. CALABRESE, J., CONCUR