**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1428
_____

PARKE BANK and VERNON PARK PLAZA, LLC,

Appellants,

v.

BANK OF AMERICA, N.A.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2:10-CV-02368)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2013

Before: SLOVITER, FUENTES, and ROTH, Circuit Judges

(Opinion Filed:  July 24, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Appellants, Parke Bank and Vernon Park Plaza, LLC (together, the "Landlords"),

filed a complaint in the United States District Court for the Eastern District of

Pennsylvania, seeking damages for breach of contract, and a declaratory judgment,

arising out of their lease with Bank of America, N.A. ("Bank of America").  The

Landlords claim that Bank of America breached the lease by refusing to restore the property to its original condition. Bank of America argues that its obligation under the lease to restore the property was extinguished by two later agreements, a Consent to Sublease and a Sublease. The District Court granted Bank of America's motion for summary judgment and dismissed the Landlords' complaint. The Landlords now appeal that ruling.[1] We will affirm.

## I.

Because we write primarily for the parties, who are well acquainted with this case, we recite only the facts essential to our disposition of this appeal. This dispute arises out of three separate but related contracts, in connection with a 1988 commercial lease for real property. The Landlords leased a building (the "Premises") to Bank of America through an agreement expiring on July 9, 2010 (the "Lease").[2] The Lease contained a requirement that Bank of America restore the Premises to its original condition, as a bank branch, upon the agreement's termination.

During Bank of America's tenancy, it negotiated a sublease of the Premises to Blockbuster Videos, Inc. ("Blockbuster"). The Lease allowed Bank of America to sublet with the Landlords' consent, and after extensive negotiations, the Landlords, Bank of America, and Blockbuster entered into a consent agreement (the "Consent to

---

[1] The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] The Landlords and Bank of America came to be parties to the lease agreement through their predecessors-in-interest. For ease of reference, we will refer to the Landlords and Bank of America as the current parties to the agreements, regardless of the original signatories.

2

Sublease") in which the Landlords consented to the sublease to Blockbuster (the "Sublease"). The Consent to Sublease contained a provision that would convert the Sublease into a direct lease between the Landlords and Blockbuster, on the condition that the Lease expire before the Sublease.

The Sublease was attached and incorporated into the Consent to Sublease. As part of the Sublease, the parties agreed that Blockbuster "shall and may peaceably and quietly have, hold and enjoy the [] Premises and improvements thereon during the term of [the Sublease]." JA 221. Further, the Sublease required Bank of America and Blockbuster to enter into a supplemental agreement to establish when the Sublease would expire (the "Supplemental Agreement"). It was signed on January 6, 1998 and set the Sublease expiration date for July 31, 2010.

Blockbuster made substantial alterations to the Premises. Before the Lease expired, the Landlords demanded that Bank of America restore the Premises to its original condition, as required under the Lease. Bank of America refused, contending that the Sublease extinguished its obligations under the Lease. The Landlords brought this action, and the District Court granted summary judgment in favor of Bank of America. The Landlords appeal this ruling.

**II.**

We review the District Court's summary judgment ruling *de novo*, applying the same standard as the District Court. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). "To affirm a grant of summary judgment on an issue of contract interpretation, [the court] must conclude that the contractual language is subject to only

3

one reasonable interpretation." *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999) (internal citations omitted). "Thus, if [a party] presents [the court] with a reasonable reading of the contract which varies from that adopted by the district court, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Am. Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 581 (3d Cir. 1995) (internal citations and quotation marks omitted).

Parties can execute two or more agreements that cover the same subject matter, and when the terms of two agreements are inconsistent and cannot stand together, the new contract takes the place of the original agreement. *Riverside Coal Co. v. Am. Coal Co.*, 139 A. 276, 278 (Conn. 1927).[3] A new agreement that replaces a prior agreement, and introduces a new party, is referred to as a "novation." *Bushnell Plaza Dev. Corp. v. Fazzano*, 400 A.2d 1311, 1315 (Conn. Super. Ct. 1983). In the lease context, "[w]here a lessee assigns a lease, and the lessor thereafter recognizes the assignee, with the latter's consent, as his immediate tenant . . . there is [a] novation." *Carrano v. Shoor*, 171 A. 17, 21 (Conn. 1934) (internal citations omitted). A novation that creates a direct relationship between a lessor and a lessee's assignee extinguishes the lessee's obligations under the original lease. *Id.*

As the District Court correctly asserted, there are two steps in our analysis of this dispute. First, we must determine whether the language in the Consent to Sublease created a conditional novation. *See Bushnell Plaza*, 400 A.2d at 1315 (finding a novation

---

[3] The parties do not dispute that Connecticut law governs the agreements discussed herein.

4

when a new agreement takes the place of a prior agreement, and introduces a new party). Second, if we find a conditional novation, we must determine whether the condition was met, triggering a novation that would extinguish Bank of America's restoration obligation under the Lease. *See Blitz v. Subklew*, 810 A.2d 841, 845 (2002) ("A condition . . . is a fact or event [that] . . . must exist or take place before there is a right to performance . . . .") (internal citations and quotation marks omitted); *Carrano*, 171 A. at 21 (finding that a novation between a lessor and a lessee's assignee extinguishes the lessee's obligations under the original lease).

The Consent to Sublease states that in "the event of a termination of the [] Lease prior to the termination of the Sublease, the Sublease shall continue in full force and effect as a direct lease between [the Landlords] . . . and [Blockbuster]." JA 188. This language creates a novation, as the Landlords' lease of the Premises to Bank of America will be replaced by the Sublease—a new agreement—and will become a direct lease with Blockbuster—a new party. *See Bushnell Plaza*, 400 A.2d at 1315 (stating that a novation occurs when a new agreement introducing a new party replaces a prior agreement); *Carrano*, 171 A. at 21 (finding a novation when "a lessee assigns a lease, and the lessor thereafter recognizes the assignee . . . as his immediate tenant."). The novation is conditional because the conversion of the Sublease into a direct lease will not automatically occur, but is dependent on the satisfaction of a condition—whether the Lease expires before the Sublease. *See Blitz*, 810 A.2d at 845 (stating that a condition is an event that must take place before performance is required).

Therefore, Bank of America's restoration obligation would be extinguished only if the Lease expired prior to the Sublease. Otherwise, there would be no novation, and Bank of America would continue to be bound by the terms of the Lease. While the parties agree that the Lease terminated on July 9, 2010, they dispute the expiration date of the Sublease.[4]

The Supplemental Agreement clearly established that the Sublease terminated on July 31, 2010. Because the Sublease was attached to the Consent to Sublease, the Landlords had the opportunity to review the two agreements before providing consent. At the time that they signed the Consent to Sublease, the Landlords were aware that the Supplemental Agreement would be executed at a later date, and could have negotiated to require their consent to this agreement to ensure the Sublease terminated prior to the Lease. However, the Landlords failed to do so.

Because the Sublease terminated after the Lease, the condition contained in the Consent to Sublease was satisfied, triggering the novation. Therefore, the Sublease became a direct lease between the Landlords and Blockbuster, and Bank of America was released from its restoration obligation under the Lease. *See Carrano*, 171 A. at 21 ("Where a lessee assigns a lease, and the lessor thereafter recognizes the assignee . . . as his immediate tenant . . . the lessee is released from his covenants in the lease.").

---

[4] The Landlords argue that the Sublease terminated on June 30, 2010, while Bank of America argues that the termination occurred on July 31, 2010. Alternatively, the Landlords seek to find support in the fact that they entered into a new agreement with Blockbuster, purportedly amending the term of the Sublease, and causing it to expire on July 9, 2010. However, we believe that this agreement is irrelevant to this dispute because Bank of America was not a party to that agreement.

Summary judgment is appropriate in this case because any other interpretation of the Lease, the Consent to Sublease, and the Sublease would result in unreasonable inconsistencies between the three agreements. *See Arnold M. Diamond, Inc.*, 180 F.3d at 521 (finding that summary judgment on an issue of contract interpretation is appropriate when "the contractual language is subject to only one reasonable interpretation."). If the Consent to Sublease did not create a conditional novation, the Lease would require Bank of America to restore the Premises to a bank branch while Blockbuster continued to enjoy its rights to use the property as a video store. This would create an unreasonable result.

## III.

Accordingly, we will affirm the Order of the District Court.